(328 P.3d 554)

No. 109,789

STATE OF KANSAS, *Appellee*, v. JOSEPH T. MCGILL, *Appellant.*

Opinion filed May 2, 2014.

*Mark T. Schoenhofer*, of Wichita, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., ATCHESON and STEGALL, JJ.

MALONE, C.J.: Joseph T. McGill was convicted of two counts of aggravated indecent liberties with a child after the district court denied his motion to dismiss or, in the alternative, his motion in limine to exclude evidence of three extrajudicial confessions. McGill appeals, arguing that the district court erred in denying his pretrial motions because the State did not offer sufficient independent evidence to establish the corpus delicti of the crimes charged apart from his alleged extrajudicial confessions. For the reasons set forth herein, we affirm the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 25, 2012, the State charged McGill with two counts of aggravated indecent liberties with a child. The alleged victims were McGill's daughters, E.T.M. and L.A.M. Count I alleged that McGill engaged in lewd fondling or touching of E.T.M. in 2011, when E.T.M. was 1 year old. Count II alleged that McGill engaged in lewd fondling or touching of L.A.M. in 2005, when L.A.M. was 3 months old.

On June 7, 2012, the district court conducted a preliminary hearing. The State called McGill's wife, Jessica McGill, as a witness and she testified to the following account. When L.A.M. was born on August 11, 2005, Jessica was living with her parents and McGill was living in an apartment nearby. Jessica returned to work in late October 2005 when L.A.M. was about 3 months old. While Jessica was at work, McGill often cared for L.A.M. McGill usually watched L.A.M. at Jessica's parents' house, and it was not uncommon for him to do so by himself. When Jessica worked the 1 to 8 p.m. shift at her job, it was McGill's responsibility to feed and bathe L.A.M. and put her to bed.

McGill and Jessica married in August 2006. The couple had three more children; the youngest was E.T.M., born July 12, 2010. McGill and Jessica began living apart in March 2011, but McGill moved back in with Jessica and the children shortly after E.T.M.'s first birthday on July 12, 2011. Both McGill and Jessica were working outside the home at that time. McGill typically got off work at 3:30 p.m. and would pick up the children. On days when Jessica

worked the 1 to 8 p.m. shift, McGill would be alone with the children from the time he picked them up when he got off work at 3:30 p.m. until the time Jessica arrived home around 8:15 or 8:30 p.m. McGill was responsible for feeding the children, bathing them, and making sure they were ready for bed. McGill showered at the couple's house, and it was not unusual for him to shower with the children.

On May 7, 2012, Jessica was at work and scheduled to stay until 8 p.m. McGill called Jessica and said that she needed to leave work and meet him at his therapist's office because he had something important he needed to tell her. Jessica could not leave work, so she told McGill she would meet him at home at 8 p.m. and he could tell her what he needed to tell her. Jessica called McGill a short time later to ask him what was going on, but McGill said he could not tell her over the phone "because it would devastate [her]." In a later phone call that day, McGill told Jessica that if he told her what he had done, she would hate him forever and would not want to see him or be with him. McGill also said he would be moving out of the couple's house.

Jessica called McGill on her way home from work and he agreed to tell her what happened if she would not tell anyone else. When Jessica arrived at the couple's house, McGill came outside and sat in the vehicle with her. Inside the car, McGill told Jessica that when L.A.M. was about 3 months old, he had put his penis in her mouth and had her suck on it. McGill also said that when E.T.M. was about 1 year old, he was taking a shower with her and rubbed his penis against her vagina.

Jessica was the only witness at the preliminary hearing. At the conclusion of the hearing, the district court bound McGill over for trial. McGill entered a plea of not guilty. On June 11, 2012, McGill filed a motion to dismiss or, in the alternative, a motion in limine to exclude the evidence of his alleged confessions. McGill asked the district court to dismiss the case pursuant to the common-law corpus delicti rule that an accused may not be convicted of a crime based solely on an uncorroborated confession. In the alternative, McGill asked for an order excluding any evidence of his alleged confessions.

On August 17, 2012, the district court conducted a hearing on the pretrial motions filed by McGill, including the motion to dismiss/motion in limine. The State called Bradley Mills, owner of Mills Family Counseling, as its first witness and he testified to the following account. On May 7, 2012, McGill came to Mills' office for his second scheduled session of a court-ordered sex offender treatment program arising from an unrelated case. Mills had arranged for McGill to take a polygraph examination earlier that day, and McGill arrived for his session after completing part of the paperwork for the polygraph examination. When McGill came into Mills' office, he was having what Mills characterized as an emotional breakdown. McGill was tearful and pacing the floor. He would sit down, stand up, and then pace some more. McGill said things like, "I'm in trouble" and "I need help." This behavior went on for about 35-40 minutes.

McGill was struggling to maintain any kind of composure and acted as though something he had revealed during the polygraph test was going to be a problem for him—he was afraid he was going to receive additional charges. As their scheduled session neared its end, Mills told McGill that he was going to receive a copy of McGill's polygraph test, so McGill might as well tell him what he was so worried about. McGill told Mills that he had put his penis in his child's mouth and fondled her 6 years ago. Then McGill said that he had put his penis in his other child's mouth about a year ago. After McGill's session ended, Mills called SRS and reported suspected abuse.

The State then called its second witness, Donald L. Williams, owner of a business that conducts private investigations and polygraph tests, who testified to the following account. McGill was referred to Williams to complete a polygraph examination and came to Williams' office for an appointment in early May 2012. As was his standard procedure before administering a polygraph examination, Williams asked McGill to fill out a questionnaire consisting of 10 pages of information for him to self-report. In the questionnaire, McGill wrote that he had a sexual encounter with "Theresa" when he was 27 years old and she was 1 year old. Theresa is E.T.M.'s middle name. In response to yes/no questions, McGill

answered that he had touched her vagina, bathed or showered with her, rubbed his penis on her, and rubbed his penis on her vagina. He also answered that she had touched his penis. ·

Also in the questionnaire, McGill detailed a sexual encounter with "Anne" when he was 20 years old and she was 3 months old. Anne is L.A.M.'s middle name. McGill answered that he had bathed or showered with her, that she had licked or sucked· his penis, and that her mouth had been on his private parts. McGill later refused to take the scheduled polygraph examination. Williams faxed the contents of the questionnaire to McGill's probation officer.

By agreement of the parties, the State noted that the district court could also consider Jessica's preliminary hearing testimony as part of the evidence on the motion to dismiss/motion in limine. No other evidence was presented. At the conclusion of the hearing, the judge took the matter under advisement.

On September 21, 2012, the parties reconvened before the district court for its ruling. The district judge denied McGill's motion to dismiss/motion in limine, stating:

"My ruling is as follows: Defendant's motion to dismiss is denied. I don't believe a court-ordered dismissal is an appropriate remedy for what the defendant is requesting in this case.

"The question and issues raised by the defense I think essentially are a sufficiency of evidence issue. And I just don't think that a motion or an order dismissing the case is an appropriate remedy here.

"As for the motion *in limine* in which the defendant asks for an order to suppress or to find inadmissible the defendant's three confessions, the defendant's motion is denied. The defendant's three confessions are admissible in evidence."

On January 24, 2013, the district court conducted a bench trial on stipulated facts. The written stipulated facts do not appear in the record on appeal, but the record reflects that the parties agreed that the district court could consider all the evidence presented at the preliminary hearing and the hearing on the pretrial motions. Based on the stipulated evidence, the district court found McGill guilty of both counts of aggravated indecent liberties with a child. McGill timely·appealed his convictions.

## Did the District Court Err in Denying McGill's Pretrial Motions?

McGill claims the district court erred in denying his pretrial motion to dismiss or, in the alternative, his motion in limine to exclude the evidence of his confessions. McGill argues that the State did not present sufficient evidence to satisfy the corpus delicti rule as expressed by the United States Supreme Court and the Kansas Supreme Court. In particular, McGill asserts that Kansas courts do not distinguish between extrajudicial confessions made to law enforcement personnel and those made to other persons. He also argues that evidence of opportunity to commit the crime charged was insufficient in order to establish the corpus delicti. The State counters that the district court did not err in denying McGill's motion upon finding that the State had presented evidence corroborating McGill's confessions, sufficient to satisfy the corpus delicti rule.

McGill and the State agree that this court should apply an abuse of discretion standard in reviewing the district court's decision to deny the pretrial motion to dismiss/motion in limine. A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012). Moreover, McGill's motion to dismiss is based on a claim of insufficient evidence. "[R]eview of a trial court's denial of a motion to dismiss for insufficient evidence asks whether the evidence, viewed in the light most favorable to the prosecution, convinces the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. [Citation omitted.]" *State v. Garcia*, 282 Kan. 252, 259-60, 144 P.3d 684 (2006).

The Latin term "corpus delicti" means the body of the offense— the substance of the crime. *State v. Yarrington*, 238 Kan. 141, 146, 708 P.2d 524 (1985). Loosely defined, the corpus delicti is the physical evidence of a crime, such as the corpse of a murdered person. Black's Law Dictionary 395 (9th ed. 2009). Properly used, the term is applicable to any crime and is not limited to homicide

cases. The corpus delicti rule is a doctrine that prohibits a prosecutor from proving the corpus delicti solely on the basis of a defendant's extrajudicial statements. Black's Law Dictionary 395 (9th ed. 2009). The prosecution must establish the corpus delicti with corroborating evidence in order to convict a defendant. Black's Law Dictionary 395 (9th ed. 2009).

The corpus delicti rule as applied by most courts focuses on whether corroborative evidence establishes the trustworthiness of the confession, rather than on whether the corroborative evidence establishes that the crime occurred. In *Smith v. United States*, 348 U.S. 147, 152, 75 S. Ct. 194, 99 L. Ed. 192 (1954), the United States Supreme Court reiterated the general rule that an accused may not be convicted of a crime solely on the basis of an uncorroborated confession. The purpose of this rule is to prevent errors in convictions based upon untrue confessions alone. 348 U.S. at 153. The Court explained:

"[I]ts foundation lies in a long history of judicial experience with confessions and in the realization that sound law enforcement requires police investigations which extend beyond the words of the accused. Confessions may be unreliable because they are coerced or induced, and although separate doctrines exclude involuntary confessions from consideration by the jury, [citations omitted], further caution is warranted because the accused may be unable to establish the involuntary nature of his statements. Moreover, though a statement may not be 'involuntary' within the meaning of this exclusionary rule, still its reliability may be suspect if it is extracted from one who is under the pressure of a police investigation—whose words may reflect the strain and confusion attending his predicament rather than a clear reflection of his past. Finally, the experience of the courts, the police and the medical profession recounts a number of false confessions voluntarily made, [citation omitted]. These are the considerations which justify a restriction on the power of the jury to convict, for this experience with confessions is not shared by the average juror. Nevertheless, because this rule does infringe on the province of the primary finder of facts, its application should be scrutinized lest the restrictions it imposes surpass the dangers which gave rise to them." *Smith*, 348 U.S. at 153.

In *Smith*, a defendant charged with tax evasion made extrajudicial statements representing the amount of tax money he thought he owed. The defendant appealed his conviction, arguing that his extrajudicial statement was not sufficiently corroborated by independent evidence. The Supreme Court addressed the quantum of

corroboration necessary to prove the existence of the crime charged, holding that "the corroborative evidence does not have to prove the offense beyond a reasonable doubt, or even by a preponderance, as long as there is substantial independent evidence that the offense has been committed, and the evidence as a whole proves beyond a reasonable doubt that defendant is guilty." 348 U.S. at 156. Furthermore, the Supreme Court noted that while all elements of a charged offense must be established by independent evidence or corroborated admissions, one available mode of corroboration is for the independent evidence to bolster the confession itself, thereby proving the offense through the statements of the accused. 348 U.S. at 156.

In *Opper v. United States*, 348 U.S. 84, 75 S. Ct. 158, 99 L. Ed. 101 (1954), decided on the same day as *Smith*, the defendant was charged and convicted of inducing a federal employee to accept compensation for services to be rendered in connection with a federal contract. The defendant admitted in a written statement that he had paid money to the federal employee, which constituted an element of the crime. In considering the extent of corroboration of admissions necessary as a matter of law to support a conviction, the Court determined that "the corroborative evidence need not be sufficient, independent of the statements, to establish the corpus delicti. It is necessary, therefore, to require the Government to introduce substantial independent evidence which would tend to establish the trustworthiness of the statement." 348 U.S. at 93.

The Supreme Court again discussed the corpus delicti rule in *Wong Sun v. United States*, 371 U.S. 471, 488-89, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). Referring to its holding in *Smith*, the Supreme Court noted that although corroboration is necessary for all elements of an offense established by admissions alone, extrinsic proof is sufficient which merely fortifies the truth of the confession, without independently establishing the crime charged. 371 U.S. at 489. All American jurisdictions have adopted some form of the corpus delicti rule requiring some degree of corroboration of a defendant's confession in order to support a conviction. The rule sometimes has been incorporated into statute or court rule. Con-

stitutional considerations, however, most likely do not demand it. 1 McCormick on Evidence § 145, p. 701 (7th ed. 2013).

In Kansas, the corpus delicti rule is a judicially created and recognized doctrine and is basically consistent with United States Supreme Court precedent on the subject. The Kansas Supreme Court has adopted the general rule that an uncorroborated extrajudicial statement is insufficient to sustain a conviction. *State v. Tillery*, 227 Kan. 342, 346, 606 P.2d 1031 (1980). However, any material facts, including the corpus delicti itself, may be proved by direct testimony, by indirect or circumstantial evidence, or by a combination of both. No exclusive mode of proof of the corpus delicti is prescribed by law. 227 Kan. at 346; *State v. Higdon*, 224 Kan. 720, 723, 585 P.2d 1048 (1978). The corpus delicti in a rape case may be proved by extrajudicial admissions and circumstantial evidence. 224 Kan. at 723. Our Supreme Court has recognized that as a basis for introduction of the defendant's confession or admission the prosecution is not required to establish the corpus delicti by proof as clear and convincing as is necessary to establish guilt; a slight or prima facie showing is sufficient. *State v. Pyle*, 216 Kan. 423, Syl. ¶ 2, 532 P.2d 1309 (1975).

*Do Kansas courts distinguish between extrajudicial confessions made to law enforcement personnel and those made to other persons?*

McGill contends that the corpus delicti rule requires corroborating evidence for all extrajudicial confessions, regardless of whether they are made to law enforcement or some other person. The State counters that our Supreme Court has distinguished between confessions to law enforcement personnel and non-law enforcement individuals and asserts that only confessions to law enforcement require corroboration.

McGill argues that the fact a defendant confessed to a non-law enforcement individual is irrelevant in determining whether there is sufficient corroborating evidence to establish the corpus delicti. He cites the decision of the Supreme Court of Iowa in *State v. Schomaker*, 303 N.W.2d 129, 131 (1981), stating:

" 'Confessions are either judicial or extrajudicial. Judicial confessions are those made in conformity to law before a committing magistrate or in court in the course of legal proceedings. Extrajudicial confessions are those which are made by a party elsewhere than before a magistrate or in court. These, by the great weight or authority, independent of statute, must be corroborated by proof of the *corpus delicti*.' [Citation omitted.]"

Based on this authority, McGill asserts that any extrajudicial confession, whether made to law enforcement or some other person, must be corroborated by independent evidence in order for the corpus delicti to be sufficiently established. He also argues that it is "well-established" that one extrajudicial confession may not be used to corroborate another extrajudicial confession. See 1 McCormick on Evidence § 146, p. 809 n.3 (7th ed. 2013).

The State asserts that our Supreme Court's decision in *State v. Waddell*, 255 Kan. 424, 874 P.2d 651 (1994), suggests that extrajudicial confessions made to law enforcement officers are distinguishable from those made to other persons. In that case, the defendant was convicted of aggravated sexual battery and felony murder. While in jail, the defendant made incriminatory statements to his attorney and to a friend who visited him; he also confessed in a statement to police. On appeal, the defendant argued that the only evidence presented by the State that supported a finding of guilt was his uncorroborated confession to police.

In response, the State argued that even without the defendant's confession to police, his guilt was established by numerous factors including the fact that the defendant confessed to a friend and the defendant told his attorney that he wanted to tell him how he killed the victim. The *Waddell* court agreed that the corroboration rule had been met, stating:

"The details of Waddell's confession are supported by the evidence: (1) A bra hook was discovered, and the bra had been forcibly removed; (2) Waddell's white t-shirt contained fabric consistent with the fiber under Stephanie's fingernails; (3) a set of keys was barely observable and a bra was found under the sweater that could not be seen until the sweater was removed; and (4) bruising on Stephanie's head was consistent with her having been hit. The weight and credibility of a confession is for the jury to determine. Free, voluntary, and deliberate confessions are entitled to great weight. [Citation omitted.]" 255 Kan. at 433.

The State acknowledges that the *Waddell* court did not expressly rely on the defendant's confessions to his attorney and friend in affirming his convictions, but it argues that the court implicitly distinguished between those confessions and the defendant's confession to police, as it was only the latter confession that the court viewed as needing corroboration. Furthermore, the State contends that the court's opinion in *Waddell* suggests that one confession can be used to corroborate another confession. The State points out that in *Waddell*, the prosecution relied in part on the defendant's statements to his attorney and friend to corroborate his confession to police and our Supreme Court found that the corroboration rule had been met. See 255 Kan. at 432.

We are not persuaded by the State's argument that *Waddell* suggests that extrajudicial confessions made to law enforcement officers are distinguishable from those made to other persons in terms of the corpus delicti rule. Rather, as a general rule, we agree with McGill that the corpus delicti rule requires corroborating evidence for all extrajudicial confessions, regardless of whether they are made to law enforcement or some other person. As the United States Supreme Court noted in *Smith*, "the experience of the courts, the police and the medical profession recounts a number of false confessions voluntarily made." 348 U.S. at 153. The purpose and foundation underlying the corpus delicti rule applies to all extrajudicial confessions offered into evidence, including confessions made to non-law enforcement individuals.

McGill's argument that one extrajudicial confession may not be used to corroborate another extrajudicial confession is more problematic, and on this point, a distinction may be drawn between confessions made to law enforcement officers and confessions made to other persons. We agree with McGill that as a general rule, a confession made to law enforcement officers cannot be corroborated by a second confession made to law enforcement officers for the purpose of satisfying the corpus delicti rule. If one confession made to law enforcement officers could be used to corroborate another confession made to law enforcement officers, then law enforcement officers investigating a crime could always circumvent the corpus delicti rule simply by interrogating an accused person

twice in order to obtain separate uncorroborated confessions as evidence to support the accused's guilt of a crime.

Nevertheless, we believe that some weight can be given to the fact that McGill confessed three separate times to non-law enforcement individuals, providing consistent details about how he molested his children, before law enforcement officers became involved in his case. In discussing the corpus delicti rule, the United States Supreme Court noted that one of the concerns justifying the rule is that the reliability of a confession "may be suspect if it is extracted from one who is under the pressure of a police investigation." *Smith*, 348 U.S. at 153. McGill cannot claim that he was under the pressure of a police investigation when he initially confessed to molesting his children. The fact that McGill confessed three separate times to non-law enforcement individuals before law enforcement officers became involved in his case is a factor that bolsters the reliability and trustworthiness of McGill's admissions.

*Is evidence of opportunity to commit the crime sufficient to establish the corpus delicti?*

McGill also argues the fact that he had a mere opportunity to commit the crimes charged is insufficient to establish the corpus delicti independently from his alleged confessions. The State disagrees, contending that to the extent McGill's confessions required corroboration, his opportunity to commit the crimes provided the "slight or prima facie showing" necessary to establish the corpus delicti. See *Pyle*, 216 Kan. at 433.

McGill cites a number of cases from other jurisdictions holding that mere opportunity to commit the crime charged is insufficient to establish the corpus delicti. See *People v. Lambert*, 104 Ill. 2d 375, 378-79, 472 N.E.2d 427 (1984); *People v. Moses*, 63 N.Y.2d 299, 482 N.Y.S.2d 228, 472 N.E.2d 4 (1984); *Troncosa v. State*, 670 S.W.2d 671, 680 (Tex. App. 1984). As an example, in *State v. Campbell*, 218 Or. App. 171, 178 P.3d 337 (2008), the defendant was convicted of aggravated indecent liberties with a child based on an extrajudicial confession made to the police. Under Oregon law, extrajudicial confessions must be corroborated by independent evidence of the corpus delicti. See 218 Or. App. at 176. The Court

of Appeals of Oregon acknowledged that there was evidence from which a factfinder could infer that the defendant had the opportunity to commit the crime, as he had been left alone in a bathroom with a 3-year-old girl as she was bathing. 218 Or. App. at 175-76. However, the court found that mere opportunity did not constitute independent evidence that a crime was committed:

"The evidence showing that defendant had an opportunity to commit the offenses establishes only that—that he had the opportunity; it does not tend to establish that the offenses actually occurred. [Citations omitted.] . . . To determine on this record that sexual abuse occurred, a factfinder would have to infer that defendant has a propensity to sexually abuse small children and that he acted in conformity with that propensity on the occasion in question. That is not a permissible inference. [Citation omitted.]" 218 Or. App. at 177.

Based on the persuasive authority from other jurisdictions cited by McGill, we agree that evidence of a person's opportunity to commit the crime, standing alone, is insufficient to corroborate an alleged extrajudicial confession in order to establish the corpus delicti. However, as we will discuss more fully herein, we conclude that evidence of a person's opportunity to commit the crime may be considered as one of multiple factors in order to corroborate an extrajudicial confession made by an accused.

*Was there sufficient corroboration to allow the introduction of McGill's extrajudicial statements?*

Under the corpus delicti rule, an accused may not be convicted solely on the basis of an uncorroborated confession. But as the United States Supreme Court stated in *Smith*, 348 U.S. at 156, "the corroborative evidence does not have to prove the offense beyond a reasonable doubt, or even by a preponderance, as long as there is substantial independent evidence that the offense has been committed, and the evidence as a whole proves beyond a reasonable doubt that defendant is guilty." In order to corroborate a confession, extrinsic proof is sufficient which merely fortifies the truth of the confession, without independently establishing the crime charged. *Wong Sun*, 371 U.S. at 489.

The Kansas Supreme Court has adopted the general rule that an uncorroborated extrajudicial statement is insufficient to sustain

a conviction. *Tillery*, 227 Kan. at 346. However, any material facts, including the corpus delicti itself, may be proved by direct testimony, by indirect or circumstantial evidence, or a combination of both. No exclusive mode of proof of the corpus delicti is prescribed by law. 227 Kan. at 346; *Higdon*, 224 Kan. at 723. Our Supreme Court has recognized that as a basis for introduction of the defendant's confession or admission the prosecution is not required to establish the corpus delicti by proof as clear and convincing as is necessary to establish guilt; a slight or prima facie showing is sufficient. *Pyle*, 216 Kan. 423, Syl. ¶ 2.

In *State v. Bradford*, 254 Kan. 133, 864 P.2d 680 (1993), the Kansas Supreme Court considered whether the State had failed to prove the corpus delicti of a felony murder. In affirming the conviction, the court reviewed whether the defendant's uncorroborated confession was sufficient to place him at the crime scene or prove whether he committed the underlying felony of attempted robbery. The court relied on *Gribble v. State*, 808 S.W.2d 65, 71-72 (Tex. Crim. 1990), *cert. denied* 501 U.S. 1232 (1991), explaining that

" 'the quantum of independent evidence necessary to corroborate the corpus delicti in a criminal prosecution relying upon the extrajudicial confession of an accused need not be great. [Citation omitted.] So long as there is some evidence which renders the corpus delicti more probable than it would be without the evidence, we believe that the essential purposes of the rule have been served. [Citations omitted.]' " 254 Kan. at 139.

Applying this rule to the facts of the case, the *Bradford* court determined that the evidence of the victim's purse and keys at the crime scene independently established the corpus delicti of attempted aggravated robbery. The court concluded:

"Proof of the corpus delicti does not require the State to prove by evidence independent of Bradford's confession that the attempted robbery was committed by Bradford. The State merely needs to corroborate the fact that, given the evidence, it is more probable than not that [the victim] was killed during the course of an attempted robbery. Sufficient corroborating proof that satisfies this burden is present in the case at bar." 254 Kan. at 139-40.

The touchstone of the corpus delicti rule is that an accused may not be convicted of a crime based solely on an uncorroborated

confession without some indicia of reliability or trustworthiness to support the confession. See *Opper,* 348 U.S. at 93 (prosecution must introduce substantial independent evidence tending to establish the trustworthiness of the statement). In order to determine whether a defendant's confession may be admissible, a court must determine whether there are any significant unique facts contained in the confession that can be independently corroborated and whether the statements were given in a manner that support the reliability of the admissions. Here, there is evidence in the record establishing the trustworthiness of McGill's confessions sufficient to support the district court's decision to deny the motion to dismiss.

McGill made three separate extrajudicial confessions. He told Jessica that when L.A.M. was 3 months old, he put his penis in her mouth and had her suck on it, and that when E.T.M. was 1 year old, he was taking a shower with her and rubbed his penis against her vagina. McGill told his therapist that he had put his penis in his child's mouth and fondled her 6 years ago and he had put his penis in his other child's mouth about a year ago. Finally, McGill wrote on his pre-polygraph questionnaire that he had a sexual encounter with "Theresa" (E.T.M.) when he was 27 years old and she was 1 year old. In response to yes/no questions, McGill answered that he had touched her vagina, bathed or showered with her, rubbed his penis on her, and rubbed his penis on her vagina. McGill also detailed a sexual encounter with "Anne" (L.A.M.) when he was 20 years old and she was 3 months old. McGill answered that he had bathed or showered with her, that she had licked or sucked his penis, and that her mouth had been on his private parts.

The circumstantial evidence elicited in Jessica's testimony bolstered McGill's three extrajudicial confessions. First, Jessica's testimony established that L.A.M. would have been about 3 months old and E.T.M. would have been about 1 year old at the time of the crimes that McGill confessed to committing, exactly the ages that McGill described in his confessions. Second, her testimony established that E.T.M.'s and L.A.M.'s middle names matched the

names of the victims described in McGill's prepolygraph question-naire.

Third, Jessica's testimony established that McGill was frequently alone with his daughters at the relevant time periods indicated for each of the crimes to which he confessed. As we have previously discussed, evidence of a person's opportunity to commit the crime, standing alone, is insufficient to corroborate an alleged extrajudicial confession in order to establish the corpus delicti. However, the evidence that McGill had the opportunity to commit the crimes in the manner that he stated in his confessions may be considered as one of multiple factors that supports the reliability of his admissions.

Fourth, Jessica's testimony established that McGill sometimes showered with E.T.M., which is consistent with his statements that he rubbed his penis on E.T.M. while taking a shower with her. We find Jessica's corroborative testimony on this point to be particularly compelling as we view it to be quite unusual in most families for a father to shower with a 1-year-old daughter. Jessica's testimony on this point independently corroborates a significant unique fact contained in McGill's confessions.

Fifth, as we have previously stated, we believe that some weight can be given to the fact that McGill made three separate statements to non-law enforcement persons before law enforcement officers became involved in the case. McGill cannot claim that he was under the pressure of a police investigation when he initially confessed to non-law enforcement persons to molesting his children. The truth of McGill's confessions was fortified by the fact that McGill confessed three separate times to non-law enforcement persons, providing consistent details about how he molested his children, before law enforcement officers became involved in the case.

Finally, McGill's demeanor and his own behavior at the time he made his statements bolster the reliability and trustworthiness of the confessions. When McGill came to Mills' office for the therapy session, he was having what Mills characterized as an emotional breakdown. McGill was tearful and pacing the floor. He would sit down, stand up, and then pace some more. McGill said things like,

"I'm in trouble" and "I need help." Likewise, when McGill talked with Jessica on the phone, he said he could not tell her what he had done over the phone "because it would devastate [her]." In a later phone call that day, McGill told Jessica that if he told her what he had done, she would hate him forever and would not want to see him or be with him. All of this testimony by Jessica "fortifies the truth of the confession[s]" made by McGill. See *Wong Sun*, 371 U.S. at 489.

We conclude that the circumstantial evidence offered by the State, particularly through Jessica's testimony, was sufficient to corroborate McGill's extrajudicial confessions such that the confessions were admissible as evidence under existing Kansas/United States Supreme Court precedent. McGill's confessions contained significant unique facts that were independently corroborated, and the statements were given in a manner that supported the reliability of the admissions. Under these circumstances, the district court did not err in denying McGill's pretrial motions to dismiss or, in the alternative, to exclude the evidence of his confessions.

If this case is further reviewed, our Supreme Court may want to clarify the application of the corpus delicti rule in Kansas. The corpus delicti rule originated as a common-law doctrine and is not founded in our state or federal constitutions. The fundamental purpose of the rule is to prevent the conviction of a person of a crime that never occurred and that can only be proved through a confession that may be false. But courts should promote a policy that balances the need to protect a person from being convicted of a crime that never occurred with the need to protect the innocent victim of a crime that actually occurred but can only be proven by a confession. In sex crimes against young children, the offender's admission to the act is often how the crime is discovered and sometimes may be the only direct evidence proving that the crime occurred.

Our system of justice requires that for any crime charged, the government must prove the defendant guilty beyond a reasonable doubt. If we trust this system to work as it should, there is little need to have any special rules governing the admissibility of uncorroborated confessions. We currently have a well-developed

body of law that protects the rights of an accused in a custodial interrogation. In addition, a court should be required to ensure that any extrajudicial confession satisfies a threshold standard of trustworthiness in order to be admissible as evidence. In making this determination, a court should consider and evaluate all the facts and circumstances of each particular case.

Here, the details of McGill's confessions were corroborated by Jessica's testimony. There were no inconsistencies in McGill's statements that would lead anyone to suspect that he might be fabricating a story. There is no evidence in the record that McGill suffers from any mental disorder, low IQ, or cognitive or learning disability, or that he has a history of making false accusations about himself or anyone else. McGill does not even claim that his confessions were false. Viewed in the light most favorable to the State, McGill's three extrajudicial confessions coupled with the indirect and circumstantial corroborative evidence provided by the State were sufficient for a rational factfinder to find McGill guilty of aggravated indecent liberties with a child beyond a reasonable doubt.

Affirmed.

\* \* \*

STEGALL, J., concurring: I join the majority opinion fully as it is a correct application of the corpus delicti rule as it currently exists in Kansas to the facts of the case at hand. I write separately in order to bring what is, in my view, needed clarity to the rule's function and application in Kansas, consistent with the decisions of the Kansas Supreme Court over the past century.

It has long been held that the corpus delicti must be proved before a conviction can be sustained. Simply put, a crime must be shown to have occurred. It is often said that the corpus delicti consists of two elements: (1) proof of an injury and (2) proof that the injury was caused by criminal means. So, for example, the corpus delicti of homicide consists of "the death of the alleged victim and the existence of some criminal agency as the cause." *State v. Pyle*, 216 Kan. 423, Syl. ¶ 1, 532 P.2d 1309 (1975). Similarly, the corpus delicti of larceny is shown by establishing "that the property

was lost by the owner; and . . . that it was lost by a felonious taking."
*State v. Aten*, 203 Kan. 920, 926, 457 P.2d 89 (1969).

A natural extension of the rule developed at common law holding that a bald extrajudicial confession, absent an independent showing of the corpus delicti of the alleged crime, was insufficient to sustain a conviction. The rule was born out of a judicial recognition that false confessions do occur as a result of varying factors including: duress; a desire to conceal the guilt of another; or a genuine—though false—belief held by the confessor of his own guilt. Thus, the fundamental purpose of the rule that prohibits convictions based on bald extrajudicial admissions or confessions without any supporting proof of the corpus delicti is to protect against false confessions. It is not intended to protect against confessions which may or may not be true but which were obtained in derogation of the rights of the accused. Numerous constitutional provisions provide such protections and the corpus delicti rule has never been understood to implicate constitutional concerns.

## APPLYING THE FORMAL PRIMA FACIE CORPUS DELICTI RULE IN KANSAS

The application of this rule to the myriad of crimes and the diverse factual scenarios courts may confront has been difficult and often confusing. The strict and formalized application of the rule is fairly straightforward, typically arises in the context of a homicide case, and is often stated as follows:

> "In homicide cases the corpus delicti is established by proof of two facts: that one person was killed and that another person did the killing. The corpus delicti may be proved by direct testimony, by indirect or circumstantial evidence, or by a combination of both.
>
> "The elements for the corpus delicti of murder must be established independently of admissions or confessions of the defendant. However, as a basis for introduction of the defendant's confession or admission, the prosecution is not required to establish the corpus delicti by proof as clear and convincing as is necessary to establish guilt; a slight or prima facie showing is sufficient." *State v. Grissom*, 251 Kan. 851, Syl. 2-3, 840 P.2d 1142 (1992).

There is a significant line of cases in Kansas applying the strict and formalized version of the rule requiring the corpus delicti to be established independent of any confession of the defendant.

In *Pyle* the Kansas Supreme Court considered for the first time a case in which the State's proof of the corpus delicti in a homicide prosecution rested entirely on circumstantial evidence—*i.e.*, the State did not produce a dead body. After reciting the formal rule, the *Pyle* court held that the State had produced sufficient evidence, independent of the defendant's admissions, that the victim was dead as a result of foul play. Among other evidence, the court relied on the fact that the victim had gone missing and was never seen again; that there was bad blood between the victim and the defendant; and that the defendant had concocted an elaborate alibi to hold that there was sufficient circumstantial evidence from which a jury could infer the corpus delicti of the charged crime. 216 Kan. at 432-33.

In *Grissom* the Kansas Supreme Court again applied the formal rule to a homicide case in which the victims' bodies were never recovered. The *Grissom* court noted that "in order to establish the corpus delicti, the State only needed to prove that [the three victims] were killed by criminal means, not that Grissom was the killer." 251 Kan. at 881. The court went on to hold that the State had presented sufficient independent evidence of the corpus delicti by showing that the families of the victims never heard from them again after their disappearance; that each victim was considered reliable and responsible; that all three had discussed their future plans; that none of the victims would have been inclined to leave the area without telling anyone; and that their homes were stocked with food. 251 Kan. at 881. The court also discussed particular circumstantial evidence tending to show that the victims' disappearances were the result of criminal means, including the fact that at the time of the disappearance large cash withdrawals were made from the victims' bank accounts. 251 Kan. at 882-83. Thus, the court ruled that once "the State established a prima facie showing of the corpus delicti for homicide on each murder count, which the State did here, the State then could introduce evidence of any admission" by the defendant. 251 Kan. at 884.

In *State v. Bradford*, 254 Kan. 133, Syl. ¶¶ 1-2, 864 P.2d 680 (1993), the Kansas Supreme Court followed both *Pyle* and *Grissom*

and applied the formal corpus delicti rule to a felony-murder charge, holding:

"Evidence independent of a defendant's confession is required to prove an underlying felony in a felony-murder case. Such evidence need not, however, be sufficient by itself to prove the underlying felony. The quantum of independent evidence necessary to corroborate the corpus delicti in a criminal prosecution relying upon the extrajudicial confession of an accused need not be great. So long as there is some evidence which renders the corpus delicti more probable than it would be without the evidence, the essential purposes of the independent evidence rule have been served."

"A conviction of even the gravest offense may be sustained by circumstantial evidence. Proving the corpus delicti does not require the State in a felony-murder case arising from an alleged attempted robbery to prove that the attempted robbery was committed by the defendant. The State merely needs to corroborate the fact that, given the evidence, it is more probable than not that the victim was killed during the course of an attempted robbery."

The court went on to find that sufficient circumstantial evidence of the attempted robbery had in fact been introduced. 254 Kan. at 139-40.

In *State v. Dang*, 267 Kan. 198, 978 P.2d 277 (1999), the Kansas Supreme Court demonstrated just how slight the quantum of independent evidence actually is in order to establish the corpus delicti under the formal application of the rule. The *Dang* court reaffirmed the rule derived from the *Pyle/Grissom/Bradford* line of cases that before extrajudicial admissions or confessions by the defendant could be relied upon by the State to prove the allegations against the defendant, a prima facie showing of the corpus delicti "must be made independently." 267 Kan. at 208. The victims in *Dang* were a mother and child whose bodies were found wrapped in linens and lying in a field. The trial judge had ruled that the " 'State's evidence is absolutely lacking that there was, in fact, a killing' " and that it was " 'not enough' " to simply rely on " 'the fact of where the bodies were found and that that would not be a place where one would normally expect to find bodies.' " 267 Kan. at 208. The Kansas Supreme Court disagreed, holding:

"The simultaneous or near-simultaneous deaths of a young woman and her small child suggests that they did not die from natural causes. The location of the bodies and their being wrapped up tend to eliminate the possibilities of murder/suicide,

double suicide, and accident. These facts support the State's theory that the deaths of Hong Anh and Hector Bui were by criminal means. Nothing more than this prima facie showing is necessary to establish the corpus delicti for homicide." 267 Kan. at 209.

The defining principle of *Pyle* and its progeny is that the independent evidence must establish a prima facie case that the *crime charged actually occurred.* The independent evidence required in these cases has nothing to do with the mode of the crime's commission, the time of its commission, the identity of the perpetrator, or any other specific factual details that might have attended the crime.

### APPLYING A TRUSTWORTHINESS OR CORROBORATION STANDARD IN KANSAS

The line of decisions requiring a strict prima facie showing of the corpus delicti itself are not, however, the only cases to apply some version of the corpus delicti rule in Kansas. There is another equally significant line of decisions running parallel in time and development to *Pyle* and its progeny that apply a different version of the rule.

Early on, the Kansas Supreme Court recognized the difficulties inherent in applying the formal corpus delicti requirement to cases in which the harm or injury suffered is less tangible and more inchoate. Such difficulties have tended to arise especially in cases of sexual crimes. In *State v. Cardwell,* 90 Kan. 606, 135 P. 597 (1913), the defendant, who had confessed to the crime of rape against his daughter and had been subsequently convicted of the crime, sought a reversal of his conviction on the grounds that the State had produced no independent evidence of the corpus delicti. The Kansas Supreme Court summarized: "It will be observed that there was no direct evidence in court of the corpus delicti—that the crime had in fact been committed . . . . The case for the state rests upon extrajudicial admissions and upon *circumstantial evidence as to these essential facts.*" (Emphasis added.) 90 Kan. at 608. The *Cardwell* court asked: "Can the corpus delicti of crime be so established?" and answered in the affirmative. 90 Kan. at 608. Thus, the *Cardwell* court modified the strict formalized ap-

plication of the corpus delicti rule and established that in certain cases the corpus delicti "may be established by evidence of admissions of guilt by the accused, *supported by circumstantial evidence tending to corroborate the admissions*, provided all the evidence is sufficient in the estimation of the jury and trial court to establish the guilt of the accused beyond a reasonable doubt." (Emphasis added.) 90 Kan. at 609. This modification was premised on the *Cardwell* court's recognition of "the reasonable rule that the law demands, and only demands, the best proof of the corpus delicti which, in the nature of the case, is attainable." 90 Kan. at 609.

The court in *Cardwell* understood that certain crimes—for example, when there is a clear and tangible physical injury or harm as there is in a homicide—should by their nature produce substantial independent evidence of the corpus delicti. On the other hand, different types of crimes—for example, when the harm may be inchoate as it is in certain instances of sexual abuse—are by their nature less likely to producing evidence of the corpus delicti apart from the defendant's confession itself. In such cases, independent evidence is still required in order to vindicate the purpose of the rule to protect against false confessions, however, the independent evidence may corroborate the facts contained in the admissions rather than the corpus delicti itself. This, according to the Kansas Supreme Court in *Cardwell*, 90 Kan. at 609, is the "best proof" of the corpus delicti that is attainable in certain cases given the inchoate nature of the injury suffered and, as such, it will be accepted.

In *State v. Bell*, 121 Kan. 866, 250 P. 281 (1926), the Kansas Supreme Court followed *Cardwell* in another rape case and applied the corroboration rule. In *Bell*, the defendant had been convicted of statutory rape of a 15-year-old girl. The State's case was largely based on the victim's father's testimony that the defendant had confessed to tearing the victim's clothes off and having sexual intercourse with her. The victim's mother had also testified that the defendant admitted to seducing their daughter and stated that he would marry her to "right the wrong." 121 Kan. at 866-67. On appeal, the defendant argued that the corpus delicti had never been proved as there had been no "proof of carnal penetration"

independent of the defendant's admissions—*i.e.*, there had been no proof of the injury or harm. The Kansas Supreme Court rejected the defendant's argument relying in part on the fact that the victim's father had discovered her torn clothing immediately prior to the defendant's confession and in part on the fact that the defendant did marry the victim immediately after confessing and offering to "make it right." See 121 Kan. at 866-68. The court held that the evidence was "quite sufficient to prove carnal penetration." 121 Kan. at 869.

It must be noted that in both *Cardwell* and *Bell* the child victims had initially reported the rapes only to recant their earlier statements at trial on the grounds that those earlier statements had been coerced. Thus, those earlier reports could also be relied upon to establish the corpus delicti. This does not alter the fact, however, that *Cardwell* and *Bell* stand for the proposition that the law does not insist on a dogmatically formal prima facie showing of the corpus delicti in cases where such a showing is not reasonably attainable, and that, in fact, the corpus delicti may be shown *through* confessions or admissions when those confessions or admissions are "supported by circumstantial evidence tending to corroborate" them. *Cardwell*, 90 Kan. at 609.

Thus, the primary distinction between *Pyle* and its progeny and *Cardwell* and its progeny lies in the different demands as to the kind of independent evidence required in order to sustain a conviction. Each rule requires independent evidence, however, *Pyle* requires a prima facie showing of the fact of the crime itself, while *Cardwell* and *Bell*, in recognition of the reality that there are certain inchoate crimes which do not produce a tangible and physical injury, held that it is sufficient if the independent evidence corroborates the facts contained in the defendant's confession, thus rendering it sufficiently reliable to permit a jury to infer the fact of the crime.

After *Bell*, the modified corpus delicti rule announced in *Cardwell* lay largely dormant in Kansas until it received a significant endorsement—though not by name—from the United States Supreme Court in three decisions announced on the same day in 1954: *Smith v. United States*, 348 U.S. 147, 75 S. Ct. 194, 99 L.

Ed. 192 (1954); *Opper v. United States*, 348 U.S. 84, 75 S. Ct. 158, 99 L. Ed. 101 (1954); and *United States v. Calderon*, 348 U.S. 160, 75 S. Ct. 186, 99 L. Ed. 202 (1954).

After giving a brief history of the use of the formal prima facie corpus delicti rule in federal common law, the Supreme Court set forth the issue in *Smith* as follows:

"The first issue is whether the requirement of corroboration may properly be applied to the crime of tax evasion. The corroboration rule, at its inception, served an extremely limited function. In order to convict of serious crimes of violence, then capital offenses, independent proof was required that someone had indeed inflicted the violence, the so-called *corpus delicti*. Once the existence of the crime was established, however, the guilt of the accused could be based on his own otherwise uncorroborated confession. But in a crime such as tax evasion there is no tangible injury which can be isolated as a *corpus delicti*. As to this crime, it cannot be shown that the crime has been committed without identifying the accused. Thus we are faced with the choice either of applying the corroboration rule to this offense and according the accused even greater protection than the rule affords to a defendant in a homicide prosecution [citations omitted] or of finding the rule wholly inapplicable because of the nature of the offense, stripping the accused of this guarantee altogether. We choose to apply the rule, with its broader guarantee, to crimes in which there is no tangible *corpus delicti*, where the corroborative evidence must implicate the accused in order to show that a crime has been committed. [Citations omitted.]" 348 U.S. at 153-54.

In applying the rule to crimes in which there is no tangible corpus delicti, the *Smith* Court asked "whether it is sufficient if the corroboration merely fortifies the truth of the confession, without independently establishing the crime charged." 348 U.S. at 156. The Court determined that such corroboration was sufficient, holding that all elements of the charged crime must be established by "independent evidence or corroborated admissions, but one available mode of corroboration is for the independent evidence to bolster the confession itself and thereby prove the offense 'through' the statements of the accused." 348 U.S. at 156.

In *Opper*, decided the same day, the Supreme Court provided a more detailed account of the divergent applications of the corpus delicti rule that had muddied the waters leading to the Court's pronouncements of that day.

"On [corroboration of admissions] the cases in the federal courts show divergence. . . . Some cases would seem only to require . . . proof of any corroborating cir-

cumstances . . . which goes to fortify the truth of the confession or tends to prove facts embraced in the confession. There is no necessity that such proof touch the *corpus delicti* at all, though, of course, the facts of the admission plus the corroborating evidence must establish all elements of the crime.

"Other decisions tend to follow the rule . . . that the corroboration must consist of substantial evidence, independent of the accused's extrajudicial statements, which tends to establish the whole of the *corpus delicti*.

"Whether the differences in quantum and type of independent proof are in principle or of expression is difficult to determine. Each case has its own facts admitted and its own corroborative evidence, which leads to patent individualization of the opinions." 348 U.S. at 92-93.

Against this backdrop, the *Opper* Court held:

"[W]e think the better rule to be that the corroborative evidence need not be sufficient, independent of the statements, to establish the *corpus delicti*. It is necessary, therefore, to require the Government to introduce substantial independent evidence which would tend to establish the trustworthiness of the statement. Thus, the independent evidence serves a dual function. It tends to make the admission reliable, thus corroborating it while also establishing independently the other necessary elements of the offense. [Citations omitted.] It is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth. Those facts plus the other evidence besides the admission must, of course, be sufficient to find guilt beyond a reasonable doubt." 348 U.S. at 93 (citing *Smith*, 348 U.S. 147).

*Smith* and *Opper*, therefore, with reasoning remarkably similar to the earlier Kansas Supreme Court decision in *Cardwell*, moved the federal common-law application of the corpus delicti rule away from its previous formalized incarnation and towards what has been referred to since as the "trustworthiness rule." Subsequent federal decisions have suggested that the formal corpus delicti rule has not been abandoned altogether in federal common law, but that it has been restricted to cases where there is a clear and tangible harm or injury. See, *e.g.*, *Wong Sun v. United States*, 371 U.S. 471, 489 & n.15, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963) (After repeating the trustworthiness standard established in *Smith*, 384 U.S. at 156, the Court added the footnote: "Where the crime involves physical damage to person or property, the prosecution must generally show that the injury for which the accused confesses responsibility did in fact occur, and that some person was criminally culpable.").

On at least two occasions since, the Kansas Supreme Court has cited *Smith* or *Opper* as persuasive and authoritative law and has applied the trustworthiness standard of *Smith, Opper,* and *Cardwell.* Our high court has never, however, explicitly described the rule this way in application, nor has it ever attempted to distinguish the modified corpus delicti rule found in *Cardwell, Smith,* and *Opper* from the formal corpus delicti rule elucidated and applied in *Pyle* and its progeny.

First, in *State v. Tillery,* 227 Kan. 342, 606 P.2d 1031 (1980), the court considered a case of alleged kidnapping and indecent liberties with a child. Of particular note, the alleged factual underpinnings for the indecent liberties charge were that the defendant had kissed the 4-year-old victim "on the mouth and lips, . . . in the vaginal area, and rubb[ed] his penis on her." 227 Kan. at 343. Thus, at least as to the indecent liberties charge, the nature of the crime was such that it was not susceptible to producing tangible evidence of harm as the injury was inchoate. Citing both *Cardwell* and *Opper,* the *Tillery* court went on to review the independent evidence to determine whether it was corroborative of the facts contained in the defendant's confession. The defendant's confession included the following facts: (1) He led the victim away from her home by her hand; (2) he placed his hand over the victim's mouth to prevent her from crying; (3) he took off his shirt before molesting the victim; (4) his shoes had come off as he fled the scene; and (5) that he smoked Pall Mall cigarettes. The court relied on the fact that independent evidence corroborated each of these facts: (1) A witness observed the defendant lead the victim away from her home; (2) a witness observed the defendant pushing the victim; (3) a man's shirt and shoes were found near the scene; and (4) the shirt pocket contained Pall Mall cigarettes. As such, the court found that the confession was corroborated and was therefore sufficiently reliable to prove the corpus delicti. *Tillery,* 227 Kan. at 346-47.

In the case *State v. Waddell,* 255 Kan. 424, 874 P.2d 651 (1994), significant confusion concerning how to conduct a proper corpus delicti analysis was introduced into Kansas caselaw. *Waddell* was a homicide case in which the proof of the corpus delicti was clear

and unambiguous. The victim was discovered propped up in a restroom stall, nude from the waist up, recently beaten, and strangled to death. It is difficult to imagine a more obvious demonstration of the formal corpus delicti than this: There was no question that the victim was dead and another person had killed her. Nevertheless, when the defendant's extrajudicial confession to the crime was challenged, the Kansas Supreme Court, citing both the United States Supreme Court's decision in *Smith* and its own prior caselaw in the *Pyle* line of decisions, proceeded to analyze the corpus delicti under the *Smith* trustworthiness rule. See *Waddell*, 255 Kan. at 431-34. The court held that "[t]he details of [the defendant's] confession are supported by the evidence" and proceeded to elucidate all of the specific facts contained in the confession for which the State had offered independent corroborating evidence. 255 Kan. at 433. Arguably, and though it did not change the result, the court in *Waddell* gave the defendant greater protections than he should have received under the *Pyle* standard given that his crime was one yielding clear and unambiguous evidence of physical injury.

Likewise, other corpus delicti cases in Kansas have tended to confuse and conflate the *Pyle* analysis and the *Cardwell* analysis. For example, in *State v. Higdon*, 224 Kan. 720, 585 P.2d 1048 (1978), the court cites to both *Pyle* and *Cardwell* for the proposition that the corpus delicti in a rape and felony-murder case must be proven and then proceeds to conduct a *Pyle* analysis finding that the corpus delicti was proven by the independent evidence offered by the coroner demonstrating physical injuries consistent with rape. 224 Kan. at 723-24. Another Kansas Supreme Court case appears to synthesize the *Pyle* and the *Cardwell* decisions— without citation to either—and to apply both rules in the same case. In *State v. Yarrington*, 238 Kan. 141, 708 P.2d 524 (1985), the court found that the first element of the corpus delicti in a homicide (the death of a person) had been established by the discovery of the victim's body while the second element of the corpus delicti (by the criminal means of another) had been established by the defendant's confession, facts of which were corroborated by independent evidence. 238 Kan. at 146-47.

## OTHER JURISDICTIONS ADOPTING THE TRUSTWORTHINESS STANDARD

Though varied in application, at least 16 states and the District of Columbia have adopted some version of the trustworthiness standard. See *State v. Bishop*, 431 S.W.3d 22 (Tenn. 2014) (adopting a modified trustworthiness standard that requires corroboration demonstrating trustworthiness plus evidence of the harm; if there is no tangible injury, then the corroboration must link the defendant to the crime); *People v. LaRosa*, 293 P.3d 567 (Colo. 2013); *State v. Suriner*, 154 Idaho 81, 294 P.3d 1093 (2013) (adopting a version of the trustworthiness standard allowing any extrajudicial confession to be submitted to the jury for a credibility determination); *State v. Heiges*, 806 N.W.2d 1 (Minn. 2011); *State v. Weisser*, 141 N.M. 93, 150 P.3d 1043 (Ct. App. 2006) (adopting a modified trustworthiness standard that requires corroboration demonstrating trustworthiness plus evidence of the harm; if there is no tangible injury, then the corroboration must link the defendant to the crime); *State v. Reddish*, 181 N.J. 553, 859 A.2d 1173 (2004) (same); *State v. Mauchley*, 67 P.3d 477 (Utah 2003); *State v. Hafford*, 252 Conn. 274, 746 A.2d 150 (2000); *State v. Osborne*, 335 S.C. 172, 516 S.E.2d 201 (1999); *State v. Parker*, 315 N.C. 222, 337 S.E.2d 487 (1985) (adopting a modified version of the trustworthiness standard requiring strong corroboration of essential facts in the defendant's confession when there is no independent evidence of injury); *Stout v. State*, 693 P.2d 617 (Okla. Crim. App. 1984); *State v. Zysk*, 123 N.H. 481, 465 A.2d 480 (1983); *State v. True*, 210 Neb. 701, 316 N.W.2d 623 (1982); *Jacinth v. State*, 593 P.2d 263 (Alaska 1979); *Harrison v. United States*, 281 A.2d 222 (D.C. 1971); *Holt v. State*, 17 Wis. 2d 468, 117 N.W.2d 626 (1962); *State v. Yoshida*, 44 Hawaii 352, 354 P.2d 986 (1960); but see *Allen v. Commonwealth*, 287 Va. 68, 752 S.E.2d 856 (2014) (refusing to adopt the trustworthiness standard in favor of the formal prima facie corpus delicti rule).

The Tennessee Supreme Court explained:

"American criminal laws have become more numerous and complex, and it is sometimes difficult to distill a violation into a particular tangible injury. For example, inchoate crimes such as attempt and conspiracy, as well as crimes like tax

evasion and child molestation, may leave behind no tangible corpus delicti to corroborate the defendant's confession. Although some jurisdictions treat such crimes as exceptions to the corpus delicti rule, other jurisdictions point to these crimes as examples of why the rule is outdated. [Citation omitted.]

"Reflecting these criticisms, many American jurisdictions have abandoned the traditional corpus delicti rule. The United States Supreme Court largely led the way by adopting what is known as the 'trustworthiness' standard in [*Smith* and *Opper* decided] the same day in 1954." *Bishop*, 431 S.W.3d at 51.

Under such circumstances, the formal corpus delicti rule becomes ineffective, as explained by the Colorado Supreme Court:

"The trustworthiness standard is more effective than the corpus delicti rule . . . : it seeks to detect false confessions by focusing on whether a confession is true or false. The trustworthiness standard also responds to the criticisms of the corpus delicti rule. It is easier to apply to complex or inchoate crimes because the corpus delicti does not have to be defined, and it is less likely to work injustice in cases where no evidence of the corpus delicti exists. [Citations omitted.] Finally, the trustworthiness standard is not duplicative of *Miranda* and similar constitutional safeguards because it protects defendants from false confessions, not involuntary ones." *LaRosa*, 293 P.3d at 577.

The Supreme Court of Utah succinctly summarized the pure trustworthiness standard as it is applied in numerous jurisdictions:

"Under the trustworthiness standard, the State must still establish '[a]ll elements of the offense.' [Citation omitted.] However, the elements may be established by independent evidence of the crime, a corroborated confession, or a combination of both. [Citation omitted.] Thus, the State does not have to provide independent evidence that a harm or injury occurred by criminal act before a confession may be admitted to help establish guilt.

"Before it can introduce a defendant's confession, however, the State must 'introduce substantial independent evidence which would tend to establish the trustworthiness of the [confession].' [Citation omitted.] Stated differently, the independent evidence must strengthen and add weight or credibility to the confession [citations omitted] so as 'to produce a confidence in the truth of the confession' [citation omitted]. Hence, the precept still stands that 'no defendant can be convicted [solely] on the basis of an uncorroborated out-of-court [confession].' [Citation omitted.]" *Mauchley*, 67 P.3d at 488.

Applying this standard,

"the prosecution is not required to present evidence other than a defendant's confession to establish the corpus delicti. Rather, the prosecution must present evidence that proves the trustworthiness or reliability of a confession. [Citation omitted.] The evidence is sufficient if the corroborating evidence supports the

essential facts admitted sufficiently to justify a jury inference of their truth. [Citation omitted.] '[T]he corroborating facts may be of *any sort whatever*, provided only that they tend to produce a confidence in the truth of the confession.' [Citation omitted.]

"To determine whether corroborating evidence proves the trustworthiness or reliability of a confession, . . . the trial court must find that corroboration exists from one or more of the following evidentiary sources: facts that corroborate facts contained in the confession; facts that establish the crime which corroborate facts contained in the confession; or facts under which the confession was made that show that the confession is trustworthy or reliable." *LaRosa*, 293 P.3d at 577-78.

The most straightforward way to understand and synthesize the confusing array of divergent facts, crimes, and methods of analyzing the rule that exist in our state's long history with corpus delicti jurisprudence is to recognize—which I would do explicitly—that long before the United States Supreme Court's pronouncements in *Smith* and *Opper*, the Kansas Supreme Court articulated the need for some form of a trustworthiness standard when confronted with establishing the corpus delicti of crimes that present no obvious proof of injury.

## CONCLUSION

In light of this history, and based on the facts of this case, I would explicitly articulate and clarify a version of the trustworthiness standard which already exists in our Supreme Court's holdings in *Cardwell*, *Bell*, and *Waddell* and which is buttressed by its adoption of *Smith* and *Opper* as authoritative in Kansas. Such a rule would require that in cases where the harm or injury is inchoate and not easily susceptible to physical proof, there must be independent corroboration establishing the trustworthiness of any extrajudicial confession or admission. There is no prescribed form such independent corroboration must take, however, it must be sufficient to enable a reasonable fact-finder to infer the corpus delicti of the alleged offense from the trustworthy confession.

In the current case we have a clear example of a crime which, by its nature, left behind no physical trace of the harm or injury that is the gravamen of the offense. Kansas courts must remain mindful of the wisdom of the *Cardwell* court that the law will only require such proof of the corpus delicti that is reasonably attainable

given the nature of the offense. The majority opinion clearly describes the independent corroboration of McGill's confessions. Such corroboration renders those confessions sufficiently reliable to permit a reasonable fact-finder to draw an inference of the corpus delicti—even in the complete absence of any independent evidence of the harm or the means of its infliction.

\* \* \*

ATCHESON, J., dissenting: The majority misconstrues and then misapplies the modified corpus delicti rule as it has developed in the common law of Kansas to affirm the convictions of Defendant Joseph T. McGill for sexually molesting his infant daughters. As abhorrent as the charged crimes may be, the rule correctly considered requires that the convictions be reversed and the complaint against McGill be dismissed because the only evidence against him comes from his own uncorroborated admissions. Rather than accept that outcome, the majority shades the rule in a manner at odds with its basic purpose and finds corroboration of the crimes where there is none. I am constrained to respectfully dissent from the result.

Although the utility of the corpus delicti rule has been and may be fairly debated, that debate does not figure in the resolution of McGill's case. The Kansas Supreme Court has recognized a limited form of the rule outlined in a series of decisions the United States Supreme Court issued 60 years ago. See *State v. Berberich*, 267 Kan. 215, 219-20, 978 P.2d 902 (1999). The leading United States Supreme Court decisions tersely discuss the corpus delicti rule and offer less than fully illuminating guidance to lower courts in determining the way a defendant's confession or admission should be corroborated to support a conviction. *Smith v. United States*, 348 U.S. 147, 75 S. Ct. 194, 99 L. Ed. 192 (1954); *Opper v. United States*, 348 U.S. 84, 75 S. Ct. 158, 99 L. Ed. 101 (1954). They do, however, require corroboration of at least some aspect of the crime to which the statement relates. Although Chief Judge Malone cites those decisions in his opinion for the majority, the result here cannot be reconciled with them. In his concurring opinion, Judge Stegall miscasts Kansas law and incorrectly suggests that in some cases

an uncorroborated confession alone may be sufficient to sustain a conviction.

## I. Historical Perspective on Corpus Delicti Rule

Some historical perspective on the corpus delicti rule facilitates a full understanding and analysis of this case. By legal lore, the rule traces back to a 17th century English case in which three persons were executed for murder based on a sweeping confession from one of them, only to have the putative victim turn up quite alive and well sometime later. See *State v. Madorie*, 156 S.W.3d 351, 354 (Mo. 2005); *Allen v. Commonwealth*, 287 Va. 68, 73, 752 S.E.2d 856 (2014). That untoward result was nearly replicated in a notorious case tried in Vermont in 1819, thereby focusing attention on the rule in this country. See *Allen*, 287 Va. at 73; Moran, *In Defense of the Corpus Delicti Rule*, 64 Ohio St. L.J. 817, 829-31 (2003). As originally conceived, the rule required that the body of the crime—the essential legal components—be supported with evidence extrinsic to a defendant's confession.

The corpus delicti of an offense entails evidence of an injury or harm and a criminal instrumentality causing the injury. *United States v. Chimal*, 976 F.2d 608, 610 (10th Cir. 1992); *State v. Hernandez*, 256 Or. App. 363, 366, 300 P.3d 261 (2013); *Bremerton v. Corbett*, 106 Wash. 2d 569, 573-74, 723 P.2d 1135 (1986). For example, to win a conviction for burglary of a dwelling, the government could not rely only on the accused's confession that he or she broke into a home by smashing a window and then took a silver tea service. The government would have to produce independent evidence of the damaged window and the missing valuables—testimony of the investigating constable and the homeowner would suffice. The evidence, however, need not implicate the defendant in the crime, since proof of identity, though a formal element of a criminal prosecution, is not considered part of the corpus delicti. *Chimal*, 976 F.2d at 610; *Com. v. Tessel*, 347 Pa. Super. 37, 43, 500 A.2d 144 (1985); *Corbett*, 106 Wash. 2d at 574.

The quintessential purpose of the corpus delicti rule is to prevent the conviction of a person for a crime that never occurred—using as the only evidence that person's necessarily false confession

or admission. *Warszower v. United States*, 312 U.S. 342, 347, 61 S. Ct. 603, 85 L. Ed. 876 (1941); *State v. Kari*, 26 Conn. App. 286, 289, 600 A.2d 1374 (1991); *Johnson v. State*, 299 S.W.3d 491, 499 (Tex. App. 2009); Moran, 64 Ohio St. L.J. at 836-37. The courts correctly recognize that individuals sometimes give false confessions and may even admit to crimes that didn't happen. See *Smith*, 348 U.S. at 152-53; *People v. Powers-Monachello*, 189 Cal. App. 4th 400, 406, 116 Cal. Rptr. 3d 899 (2010); *Corbett*, 106 Wash. 2d at 576-77. The reasons are often bound up in mental aberrations that may alone account for those confessions or that may combine with stressful police interrogation techniques to produce them.

The rule typically exists as common-law doctrine, a judicially created component of the criminal law. Some states have codified a form of the rule. See, *e.g.*, Minn. Stat. § 634.03 (2012); Or. Rev. Stat. § 136.425 (2013). Kansas has not. From time to time, the United States Supreme Court has considered the corpus delicti rule as part of the federal common law in reviewing criminal prosecutions. The rule, however, has neither a constitutional foundation nor a constitutional mandate. See *Corbett*, 106 Wash. 2d at 576. For state courts, then, those decisions offer persuasive authority.

Both decried as a near useless and sometimes dangerous common-law relic and praised as a necessary shield against wrongful convictions, see *McGill*, slip op. at 48 n.4, the corpus delicti rule has been modified in many jurisdictions and abandoned in some. See *People v. LaRosa*, 293 P.3d 567, 577 (Colo. 2013). In those comparatively limited cases where it properly applies, courts have, from time to time, construed the rule with stunning illogic to avoid setting aside convictions. See Mullen, *Rule Without Reason: Requiring Independent Proof of the Corpus Delicti as a Condition of Admitting an Extrajudicial Confession*, 27 U.S.F. L. Rev. 385, 407, 416-17 (Winter 1993). A review of the rule across jurisdictions yields a mosaic of differing rationales and applications with more than a highlight or two of skepticism. See Mullen, 27 U.S.F. L. Rev. at 390.

## II. The Rule in Kansas: Borrowing from the United States Supreme Court

In recent times, dating that period somewhat arbitrarily from court unification in 1977, the Kansas Supreme Court has consistently looked to several United States Supreme Court cases decided in the mid-1950s as guiding authority for the rule's application here. See *Berberich*, 267 Kan. at 219-20; *State v. Waddell*, 255 Kan. 424, 431-34, 874 P.2d 651 (1994); *State v. Tillery*, 227 Kan. 342, 346, 606 P.2d 1031 (1980). Central in that authority are *Smith*, 348 U.S. 147, and *Opper*, 348 U.S. 84. Those cases modify the traditional corpus delicti rule by relaxing the requirement that independent evidence corroborate every essential component of the crime to uphold a conviction resting, in part, on the accused's confession. Rather, the independent evidence must serve overlapping functions by corroborating at least part of the confession's description of the crime and establishing any elements of the crime not shown in the confession. In that way, the independent evidence demonstrates the trustworthiness of the confession as an instrument proving the defendant's commission of the charged offense.[1]

[1]For purposes of this case and the corpus delicti rule as applied in Kansas, I draw no particular distinction between confessions and admissions. A confession entails a statement of facts that, if true, directly supports criminal liability and often includes an acknowledgement of guilt. *Opper*, 348 U.S. at 91; Black's Law Dictionary 338 (9th ed. 2009). McGill's statements were confessions. An admission is a statement of a party offered against that party. Black's Law Dictionary 53 (9th ed. 2009). An admission need not be inculpatory on its face, though in the context of other evidence it may tend to establish guilt. The statements at issue in *Smith* and *Opper* were admissions rather than confessions. But the Court recognized no distinction between admissions and confessions for purposes of extrinsic corroboration. *Smith*, 348 U.S. at 154-55; *Opper*, 348 U.S. at 90-91. Likewise, the corpus delicti rule has no application to admissions a defendant makes in court, as during a plea hearing. So the debate concerns only extrajudicial statements.

The majority misreads *Opper* (and a paraphrase of *Opper* in *Wong Sun v. United States*, 371 U.S. 471, 489, 83 S. Ct. 407, 9 L. Ed. 2d 441 [1963]) to say that corroboration of information in a confession unrelated to the commission of the crime renders the statement trustworthy as proof of the crime. In other words, according to the majority, if peripheral information in a confession immaterial to the charged offense can be verified, the modified corpus delicti rule has been satisfied. But that's not what *Opper* says. And to apply *Opper* that way undercuts the fundamental purpose of the rule.

Opper was charged with making an illegal payment or kickback to a government procurement officer for a favorable decision on a product he hoped to sell to the Air Force. During a government investigation, Opper admitted giving the procurement officer money but claimed it was a loan unconnected to the decision on the product. So Opper made admissions concerning facts essential to the crime, particularly the payment, but cast them in a benign light. At trial, the government presented extrinsic evidence verifying the payment and its timing relative to procurement decision, thereby corroborating the exchange and circumstantially demonstrating an illegal quid pro quo. The Court affirmed Opper's conviction. 348 U.S. at 93-94.

To frame its ruling, the *Opper* Court outlined the split it perceived in the federal caselaw construing the corpus delicti rule. On the one hand, cases typified by *Daeche v. United States*, 250 F. 566 (2d Cir. 1918), held corroborating evidence "sufficient if it touches the corpus delicti" or the legal injury forming the basis of the criminal charge and, thus, "goes to fortify the truthfulness of the confession." *Opper*, 348 U.S. at 92. On the other hand, a divergent line of authority following *Forte v. United States*, 94 F.2d 236 (D.C. Cir. 1937), required "corroboration . . . consist[ing] of substantial evidence . . . tend[ing] to establish the whole of the corpus delicti." *Opper*, 348 U.S. at 93.[2]

[2]The Court recognized a subgroup of cases within the *Daeche* formulation of the rule in which the corroborating evidence circumstantially established aspects of the corpus delicti rather than directly doing so. *Opper*, 348 U.S. at 92 & n.10 (cases cited).

The Court then explained its preference for the *Daeche* application of the corpus delicti rule this way:

"[W]e think the better rule to be that the corroborative evidence need not be sufficient, independent of the statements, to establish the corpus delicti. It is necessary, therefore, to require the Government to introduce substantial independent evidence which would tend to establish the trustworthiness of the statement. Thus, the independent evidence serves a dual function. It tends to make the admission reliable, thus corroborating it while also establishing independently the other necessary elements of the offense. [Citation omitted.] It is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth. Those facts plus the other evidence besides the admission must, of course, be sufficient to find guilt beyond a reasonable doubt." *Opper*, 348 U.S. at 93.

The evidence corroborating the confession or statement need not itself support every part of the corpus delicti. But that evidence must establish independently at least some aspect or element of the offense, thereby fulfilling the described "dual function" of bolstering the trustworthiness of the statement and demonstrating that a crime actually had been committed. The Court explained that the independent evidence must support "essential facts" contained in the statement. Both the independent evidence and those essential facts, therefore, have to relate to the principal elements of the crime and, thus, to either the corpus delicti or the identity of the perpetrator. The corroboration of essential facts in the statement then permits a jury to infer the truthfulness or reliability of the remainder of the statement. The corroborated statement combined with the independent corroborating evidence will establish the elements of the offense and will suffice to sustain a conviction.

The *Smith* decision, not surprisingly, comports with *Opper*. In that case, Smith was prosecuted for tax evasion based on his substantial underreporting of income. Statements from Smith valuing his net worth were key to the government case. Smith acquired property worth far more than his reported income and disclaimed other financial resources to do so. Characterizing Smith's statements of his net worth as a "cornerstone" of the prosecution, the Court recognized that admissions of such importance "should not go uncorroborated." 348 U.S. at 155. The Court also recognized, virtually as a given, the principle that "the corroborative evidence

does not have to prove the offense . . ., as long as there is substantial independent evidence that the offense has been committed." 348 U.S. at 156. In turn, the elements of the offense must be established through either "independent evidence" or "corroborated admissions." 348 U.S. at 156. That independent evidence may corroborate the admissions. 348 U.S. at 156. In other words, the corroborating evidence must bear on facts integral to the charged offense to support the defendant's out-of-court statements. So in *Smith*, the government had to produce independent evidence indicating, though not necessarily proving, an understatement of taxable income to corroborate the admissions. 348 U.S. at 157.

With *Opper* and *Smith*, the Court endorsed a modified version of the classic corpus delicti rule by requiring that evidence extrinsic to the defendant's statement corroborate or confirm some part of the criminal activity directly or circumstantially. What the Court did not do is create a general test of trustworthiness supplanting corroboration of the criminal activity by some extrinsic evidence. Under that type of test, a confession alone would be sufficient to convict if the circumstances surrounding its making rendered it "trustworthy," even though no external evidence confirmed in any way that the recited crime occurred. *LaRosa*, 293 P.3d at 570; *State v. Mauchley*, 67 P.3d 477, 489 (Utah 2003) (unsupported confession may be deemed reliable based on its spontaneity, the absence of threats or promises, and the physical and mental condition of the accused at the time, among other factors).Whatever the plus and minuses of a trustworthiness test—and there are both—the Court, in *Opper* and *Smith*, did not jettison the corpus delicti rule for that approach. Nor has the Kansas Supreme Court. But, as I discuss, Judge Stegall incorrectly posits that Kansas has actually adopted a trustworthiness rule.

In sum, *Smith* and *Opper* require that evidence corroborating a confession confirm or support factual aspects of the crime described in the confession and not merely other, tangential circumstances the defendant has recounted. Other courts have construed and applied those decisions that way. See *United States v. Hilger*, 728 F.3d 947, 949 (9th Cir. 2013); *United States v. Stephens*, 482 F.3d 669, 672-73 (4th Cir. 2007); *United States v. Lopez-Alvarez*,

970 F.2d 583, 592 (9th Cir. 1992) (construing *Opper* and *Wong Sun* to require that government present evidence independent of defendant's confession "to establish that the criminal conduct at the core of the offense has occurred," although the complete corpus delicti need not be supported); *United States v. Fearn*, 589 F.2d 1316, 1322 (7th Cir. 1978) ("[I]n the present case there is no tangible *corpus delicti*[,] and the corroborative evidence must implicate the accused to show that a crime has been committed."); 589 F.2d at 1326 (Bauer, J., concurring) (corpus delicti "need not be established by evidence completely independent of confession"). The *Stephens* case is illustrative. After being arrested, Stephens told federal agents a drug dealer named Red, who drove a white Mazda, fronted him cocaine to sell. Stephens was convicted of two drug trafficking charges based on his confession and testimony from a federal agent that he was aware of Niron Nichols, a drug dealer with the street name of Red and a white Mazda. At trial, Stephens testified he had lied to the federal agents about associating with Red in hopes of cutting a deal on a firearms charge against him. Citing *Smith* and *Opper*, the Fourth Circuit reversed the convictions finding Stephens' confession had not been corroborated with respect to the charged criminal enterprise. Verification of those details he offered about Nichols' street name and car did not establish that he and Nichols "were engaged in a conspiracy to sell cocaine," and, therefore, failed to corroborate the essential facts or representations in the confession. *Stephens*, 482 F.3d at 673.

### III. The Majority Misapplies the Kansas Rule

Here, the majority falters both by relying on verification of nonessential facts in McGill's confessions as sufficient corroboration and by applying what seems to be a general trustworthiness test. The majority ultimately cites nothing that corroborates the recited criminal activity either directly or inferentially, as required by the modified corpus delicti rule.

The majority points out that in the confessions, McGill correctly identifies his daughters by name and age. The majority then submits that information satisfies the corroboration requirement of

*Opper*. But the names and specific ages of the victims are not essential facts of the crime or part of the corpus delicti. More to the point here, McGill, as the father of the children, would be expected to know their names and ages. That he did is neither surprising nor relevant in the sense of making the commission of the crime any more or less likely true. Had McGill said in his confession that he watched part of *Gone with the Wind* on television the day he molested one of his daughters and it starred Clark Gable and Vivien Leigh, his correct identification of the leads in the movie would do nothing to satisfy the modified corpus delicti rule. Those facts are immaterial to corroborating some aspect of the crime, just as his knowledge of the names and ages of his daughters must be.

The majority similarly and mistakenly imputes legal significance to McGill's being alone with his children from time to time. A parent typically will spend time with his or her children outside the presence of other adults. So that does nothing to corroborate some essential fact of the crime.

In his statements, McGill said he molested one of his daughters in the shower. The majority then makes much of the testimony of McGill's wife that he sometimes showered with the children. The majority declares the behavior "to be quite unusual" and finds it to be circumstantial evidence of the corpus delicti and, thus, corroborative of the confessions. Slip op. at 18. The record evidence doesn't support those conclusions. Neither side called an expert witness to testify about the occurrence of communal bathing among family members. And I, too, might suppose it to be uncommon, but I have neither a valid frame of reference for that supposition nor any evidence in the record for such a conclusion. Assuming a court might take judicial notice that a parent showering with his or her young children would be statistically rare or could be characterized as distinctly odd behavior (though both assumptions plainly overtax judicial notice), that doesn't circumstantially support the charged sex offenses or corroborate essential facts of the recited crimes. See *Allen*, 287 Va. at 77-78 (fact that grandfather occasionally slept in same bed with 4-year-old grandson does not corroborate grandfather's confession he had touched the child's

genitals while the child slept). Had the State presented reliable expert testimony that families engaging in communal bathing experience a statistically significant increased incidence of incest compared to other families, that opinion evidence, at least arguably, could circumstantially support the corpus delicti and, in turn, corroborate the essential facts of the confessions. But without the linchpin expert testimony, the inference the majority draws can't rise above impermissible speculation. Adopting the majority's reasoning, a court could find corroboration for sexual molestation charges from the practice of nudism or for physical abuse charges from the practice of ritual animal sacrifice. The corpus delicti rule can't properly be stretched that far.

The majority finds corroboration in McGill's multiple confessions to persons not directly connected with law enforcement agencies and given in situations without the often coercive trappings of police interrogation. But courts applying some form of the corpus delicti rule reject the argument that serial confessions corroborate one another in the way independent evidence of the crime does. In *United States v. Calderon*, 348 U.S. 160, 165, 75 S. Ct. 186, 99 L. Ed. 202 (1954), a case decided with *Smith* and *Opper*, the Court recognized that the defendant's various statements concerning his net worth could not corroborate each other in a prosecution for tax evasion. The Court reiterated that aspect of the corpus delicti rule in *Wong Sun*, 371 U.S. at 490 n.15 ("[O]ne uncorroborated admission by the accused does not, standing alone, corroborate an unverified confession." [citing *Calderon*, 348 U.S. at 165]). Although the Kansas appellate courts have not addressed the precise point, other courts recognize that serial uncorroborated admissions do not corroborate each other. See *State v. Weisser*, 141 N.M. 93, 101, 150 P.3d 1043 (Ct. App. 2006) (cases cited); *State v. Kelley*, 239 Or. App. 266, 277-78, 243 P.3d 1195 (2010); *State v. Aten*, 79 Wash. App. 79, 91 & n.24, 900 P.2d 579 (1995) (cases cited). Adopting a contrary position in this case breaks with the Kansas Supreme Court's preference for the modified corpus delicti rule outlined by the United States Supreme Court and breaks with the weight of authority construing the rule. See *State v. Mesot*, No. M200602599-CCA-R-CD, 2008 WL 732151, at *5 (Tenn. Crim.

App. 2008) (unpublished opinion) ("We have been unable to find authority from any jurisdiction which holds that multiple confessions or admissions may alone serve as independent corroborating evidence in establishing the corpus delicti."); compare *State v. Urie*, 92 Idaho 71, 73-74, 437 P.2d 24 (1968) (finding multiple inculpatory statements corroborative in conjunction with other evidence).

Establishing corroboration through multiple statements that are otherwise unverified by extrinsic evidence of the purported offense undercuts the elemental purpose of the corpus delicti rule—preventing convictions for crimes that never happened. A person voluntarily admitting to an imagined crime presumably would have little or no compunction about repeating that admission, especially when he or she acts upon a mental aberration or for some misguided ulterior purpose. The corpus delicti rule essentially sets what, in theory, is a bright line by precluding a conviction based on a confession absent independent evidence of the crime. (Just where courts draw that line isn't nearly so bright, since they take widely differing and sometimes inexplicable views of what constitutes independent evidence.) Regardless of how trustworthy or reliable a confession may seem, it alone cannot sustain a conviction. The bright line is not dimmed by serial confessions lacking extrinsic evidentiary corroboration.

So the majority effectively sidesteps the corpus delicti rule altogether and relies on the circumstances surrounding the making of McGill's statements to declare them sufficiently trustworthy to support his convictions without any extrinsic corroborating evidence of the crimes. The majority finds trustworthiness in the very existence of multiple incriminating statements. And the majority considers McGill's reported demeanor in making the statements. McGill seemed remarkably ill at ease during the therapy session in which he admitted molesting his daughters; and he prefaced the admission to his wife by telling her what he had to say would be devastating. That might indicate McGill truly believed he molested his daughters. However adamantly a person might believe he or she actually committed a crime, that belief and its articulation in a confession do not satisfy the corpus delicti rule.

Here, the record is silent on McGill's explanation, if any, for his statements. That's not particularly surprising. Under the modified corpus delicti rule, the absence of corroborating extrinsic evidence of the charged offenses is determinative. McGill need not show the confessions amounted to manifestations of some mental illness or aberration. Expert psychological testimony, disputed or not, would be irrelevant to the sufficiency of the evidence to convict under the Kansas rule, so McGill had no particular incentive to go down that path or to otherwise defuse the statements.

Rather than accept outcomes of the sort required here, at least a few courts have abandoned the corpus delicti rule in favor of a trustworthiness test for uncorroborated confessions. *LaRosa*, 293 P.3d at 570 (confession sufficient to sustain conviction if "facts under which the confession was made . . . show that the confession is trustworthy or reliable"); *Mauchley*, 67 P.3d at 490. Last year, the Idaho Supreme Court jettisoned its idiosyncratic version of the corpus delicti rule in favor of submitting uncorroborated confessions or admissions to the jurors and simply allowing them to make of the evidence what they would. *State v. Suriner*, 154 Idaho 81, 88, 294 P.3d 1093 (2013) (Rather than "attempt[ing] to fashion" a substitute for the corpus delicti rule, the court held "the jury can give a defendant's extrajudicial confession or statement whatever weight it deems appropriate along with all of the other evidence when deciding whether the State has proved guilt beyond a reasonable doubt.").[3] Earlier this year, the Virginia Supreme Court expressly declined to replace the corpus delicti rule with a trustworthiness test. See *Allen v. Commonwealth*, 287 Va. 68, 78, n.5, 752 S.E.2d 856 (2014). As I have indicated, any such call is plainly out of our hands. The Kansas Supreme Court has opted for a modified corpus delicti rule, and those decisions are controlling. While the majority might pitch a trustworthiness test as a better approach, it cannot apply that test either overtly or covertly.

[3]As described in *Suriner*, the Idaho courts had already modified the corpus delicti rule so that the corroboration requirement could be satisfied based on the circumstances surrounding the making of a defendant's confession, including repetition of the inculpatory statement. 154 Idaho at 84-85. The court acknowledged

the apparent inconsistency between the traditional purpose of the rule and allowing corroboration through a defendant's repeated statements of guilt. But the court explained that "the rule as adopted and applied by this Court has not been designed . . . to prevent convictions based upon false confessions." 154 Idaho at 85. In *Suriner*, the Idaho Supreme Court arguably did away with something that functioned much more as a trustworthiness test than a version of the corpus delicti rule.

Some courts and commentators have mistakenly suggested *Smith* and *Opper* fashioned a trustworthiness test of the kind adopted in Colorado and Utah. See *Mauchley*, 67 P.3d at 488; Moran, *In Defense of the Corpus Delicti Rule*, 64 Ohio St. L.J. 817, 831-32 (2003). But they misconstrue the Court's decisions. As I have said, the Court required corroboration of confessions and admissions through evidence extrinsic to the accused's statements showing the charged offense occurred or the accused participated in conduct forming part of the crime. For example, Opper's payment of money to the government procurement officer was either an innocent loan in his version of events or a payoff for a favorable decision in the government's version. Either way, the payment was a fact essential to the government's case and extrinsic proof of it bolstered that case by demonstrating part of the corpus delicti. So *Smith* and *Opper* shifted from requiring that extrinsic facts related to the offense establish the entire corpus delicti to requiring that those facts support or corroborate the defendant's admissions about the criminal activity—thereby, in the words of *Opper*, tending "to establish the trustworthiness of the statement." 348 U.S. at 164. Those decisions, however, did not hold or suggest a confession or admission could be treated as reliable or trustworthy based simply on the circumstances under which the accused had made the statement.[4]

[4]Neither the corpus delicti rule nor the trustworthiness test works magic. Both can and will result in injustice in some cases and foster justice in others. Professor David A. Moran and Phoenix Assistant City Attorney B. Donald Taylor, III, provide a spirited point-counterpoint debate of the two approaches in their respective articles using factually similar cases from Michigan and Arizona

as the springboards for their arguments. Moran, 64 Ohio St. L.J. 817; Taylor, *Evidence Beyond The Confession: Abolish Arizona's Corpus Delicti Rule*, 41 Ariz. Att'y 22 (May 2005). The cases involved homicide prosecutions in which mothers confessed to killing their children when the deaths had originally been attributed to sudden infant death syndrome and, therefore, classified as accidental. Infant deaths without obvious physical causes appear to be a repeat corpus delicti battleground. See *State v. Nieves*, 207 Ariz. 438, 87 P.3d 851 (2004); *State v. Tiffany*, 139 Idaho 909, 88 P.3d 728 (2004); *State v. Reed*; 676 A.2d 479 (Me. 1996); *Aten*, 130 Wash. 2d 640. So are prosecutions of sex crimes against young children. See *People v. LaRosa*, 293 P.3d 567 (Colo. 2013); *State v. Sweat*, 366 N.C. 79, 727 S.E.2d 691 (2012); *Allen*, 287 Va. 68.

The corpus delicti rule may result in the release of (or a decision not to prosecute) a person who provides what appears to be a clear, cogent, and full confession to a crime that cannot otherwise be verified. But it also protects someone giving an uncorroborated confession because of psychological instability or for some ulterior motive. The wisdom of that tradeoff takes center stage in the debate about the rule's worth. The trustworthiness test is no perfect antidote. The test, as outlined in *LaRosa* and *Mauchley*, is so amorphous as to be almost formless and, thus, subject to wildly inconsistent, if not arbitrary, application across cases. And it might well spark irreconcilable expert battles over an accused's mental acuity if the confession were argued to be the product of a compulsion, delusion, or other aberration.

In short, McGill's confessions were not corroborated with any extrinsic evidence of the crimes or his commission of them. There is no independent evidence the offenses occurred. Under the modified corpus delicti rule applicable in Kansas, those confessions and, thus, the State's evidence are insufficient to support the charges.

In *Smith*, 348 U.S. at 153-54, the Court observed that some crimes, such as the tax evasion charge at issue there, do not present a traditional corpus delicti because they create no physical harm or injury—the bludgeoned corpse in a murder or, more prosaically, the broken window in a burglary. The corroboration rule still applies, and the extrinsic facts then must implicate the defendant in

the criminal conduct. 348 U.S. at 153-54. To the extent that the charged offenses here might fall in that category—the molestation to which McGill confessed would not have caused discernible physical injury to the children—the result would be no different. Only McGill's confessions support his participation in the criminal activity.

As I have indicated, Judge Stegall's concurring opinion mischaracterizes Kansas precedent and the decisions in *Smith* and *Opper* to forge a rule that would permit a criminal defendant to be convicted solely on the basis of his or her confession without any external corroboration of the alleged offense. Judge Stegall effectively says Kansas has already joined Utah and Colorado in rejecting outright any form of the corpus delicti rule in favor of allowing convictions based on uncorroborated confessions that seem "trustworthy"—whatever that means or however that might be measured.

First, Judge Stegall misconstrues the issues and the reasoning in *State v. Cardwell*, 90 Kan. 606, 135 P. 597 (1913), and *State v. Bell*, 121 Kan. 866, 250 P. 281 (1926), to support his thesis that a conviction in Kansas may be based on a confession absent any extrinsic evidence of the crime. Those cases lend no support to that proposition, and the *Cardwell* court expressly disclaimed any reflection on that question. 90 Kan. at 609 ("That a bald confession of one that he has committed a certain crime, without other evidence or circumstances to corroborate the confession, will sustain a conviction is, we believe, nowhere contended.").

In *Cardwell*, the defendant's several confessions to having raped his minor daughter were corroborated by a sworn, written statement of the victim that she had been sexually assaulted by her father; oral representations of the victim to that effect; and an oral account from her brother that he had seen his father and sister having sexual intercourse. At trial, all of them recanted those extrajudicial statements. The issue before the court on appeal was simply whether the extrajudicial statements of the victim and her brother were sufficient to corroborate the confessions under the corpus delicti rule. The court ruled they were. 90 Kan. at 607-08. That hardly seems remarkable—a person's statement, even later

recanted, that he or she has been the victim of a crime at the hands of the defendant ought to satisfy any iteration of the corpus delicti rule. And the Kansas courts have long held the statement of a rape victim is legally sufficient to sustain a conviction for that offense. See *State v. Tinkler*, 72 Kan. 262, 264-65, 83 P. 830 (1905). So the *Cardwell* court presumed to decide nothing more than the sufficiency of the corroboration of the confessions. Nor did it decide anything more.

So general language from that case should not be unhitched from the factual circumstances of the decision and cited as authority for a substantially different proposition, especially one the court itself presumed to avoid. See *Illinois v. Lidster*, 540 U.S. 419, 424, 124 S. Ct. 885, 157 L. Ed. 2d 843 (2004) (Language in judicial opinions should be read "*as referring in context to circumstances similar to the circumstances then before the Court and not referring to quite different circumstances that the Court was not then considering.*"); *Armour & Co. v. Wantock*, 323 U.S. 126, 132-33, 65 S. Ct. 165, 89 L. Ed. 118 (1944). In *Armour*, Justice Robert Jackson admonished counsel that "words of our opinions are to be read in the light of the facts of the case under discussion." 323 U.S. at 133. And he cautioned: "General expressions transposed to other facts are often misleading." 323 U.S. at 133.

The *Bell* decision stands for the same legal proposition as *Cardwell*. In that case, Bell was convicted of statutory rape for having sexual intercourse with a 15-year-old girl while they were on a date. Bell made inculpatory statements and promised to marry the young woman to make amends. They were married several days later, but things did not go well. Six weeks later, the victim provided law enforcement officials with a signed affidavit stating that Bell had had sexual intercourse with her before their marriage and against her will. After Bell was charged, the victim testified to the offense at the preliminary hearing. But during the trial, she recanted the affidavit and that testimony. The jury convicted Bell. The Kansas Supreme Court affirmed, finding Bell's extrajudicial admissions of the offense to be corroborated by the victim's statements, the sudden marriage, and the victim's ripped undergarments her mother found the day after the crime. 121 Kan. at 868-69. Again, nothing

in *Bell* suggests the court would have upheld a conviction based solely on an uncorroborated confession of the defendant.

In short, neither *Cardwell* nor *Bell* does the work Judge Stegall assigns them collectively in his assessment that the modified form of the corpus delicti rule recognized in Kansas really amounts to a latent adoption of the trustworthiness doctrine.

Judge Stegall submits *Smith* and *Opper* essentially confirm his assessment. But, as I have explained, those cases modify the strict corpus delicti rule to the extent that some extrinsic evidence of a crime or a defendant's commission of an act integral to the offense—such as the underreporting of income in a tax prosecution or the payment of money to a government employee in a bribery prosecution—will suffice to corroborate a confession or admission. Those cases do not abrogate the requirement for some extrinsic corroboration of the defendant's criminality. And they do not permit a criminal conviction using solely a confession deemed trustworthy based on the circumstances under which it was given. The more recent Kansas cases Judge Stegall cites apply *Smith* and *Opper* in cases with substantial corroborating evidence; they do not embrace, endorse, or rely on the trustworthiness doctrine outlined in *LaRosa* or *Mauchley*.

Finally, Judge Stegall implies that many jurisdictions have adopted "trustworthiness" as the test for the legal sufficiency of a confession to sustain a conviction. His argument, however, is misleading because he lumps together jurisdictions requiring some extrinsic proof of criminal conduct to corroborate a confession—a modified form of the corpus delicti rule—with those jurisdictions that have done away with the rule entirely. While all of those cases have rejected the traditional corpus delicti rule requiring external proof of each material aspect of the charged crime, many of them have opted for a less rigid form of the rule akin to what the United States Supreme Court recognized in *Smith* and *Opper* and what Kansas has borrowed from those two decisions. See, *e.g.*, *State v. Reddish*, 181 N.J. 553, 617-19, 859 A.2d 1173 (2004); *Weisser*, 141 N.M. at 100; *State v. Parker*, 315 N.C. 222, 236, 337 S.E.2d 487 (1985). Other cases treat intrinsic trustworthiness, considering only the circumstances under which a person confesses, as a sufficient

form of corroboration of a confession. See, *e.g.*, *State v. Bishop*, 431 S.W.3d 22, 60 (Tenn. 2014); *LaRosa*, 293 P.3d at 578; *Mauchley*, 67 P.3d at 491. Those cases either explicitly reject the corpus delicti rule in any form, as does *Mauchley*, or implicitly do so, as in *Bishop*. And they rest on a circularity of reasoning in which the circumstances of a confession's making not only establish the statement's "trustworthiness" but also provide "corroborating evidence" of the content. In effect, trustworthiness somehow both demonstrates the reliability of the statement's content and then corroborates that content. See *LaRosa*, 293 P.3d at 578.

But corroboration under *Smith*, *Opper*, and their modified corpus delicti rule requires extrinsic evidence confirming material factual representations in an accused's admission, thus conforming to the common understanding of how something may be corroborated. See Black's Law Dictionary 397 (9th ed. 2009) (corroboration means "confirmation or support by additional evidence or authority"); The American Heritage Dictionary of the English Language 412 (5th ed. 2011) (corroborate defined as "[t]o strengthen or support with other evidence"); see also *In re J.D.C.*, 284 Kan. 155, 167-68, 159 P.3d 974 (2007) (child victim's report of sexual abuse may be corroborated by eyewitness testimony; confession of the abuser; medical documentation of injury; or circumstantial evidence, such as otherwise unexplained abnormal behavior or knowledge of sexual activity, consistent with described abuse); *State v. Landis*, 37 Kan. App. 2d 409, 419-20, 156 P.3d 675 (informant tip corroborated by independent police verification of factual representations), *rev. denied* 284 Kan. 949 (2007). In turn, that corroboration demonstrates trustworthiness or reliability of an accused's admissions. What *Bishop*, *LaRosa*, and *Mauchley* have crafted is different from and at odds with the corpus delicti rule applied in Kansas.

## IV. PROCEDURAL RAMIFICATIONS OF CORPUS DELICTI RULE

The procedural development of this case in the district court implicates aspects of how and when the corpus delicti rule should be applied that have generated conflicting decisions across juris-

dictions. And, in one respect, the Kansas appellate authorities themselves conflict.

With the State's agreement, the district court took up the matter of McGill's confessions and their corroboration under the corpus delicti rule on the defense motion to dismiss the complaint, as provided in K.S.A. 22-3208, or in the alternative for an order in limine to exclude the confessions as evidence at trial. At the motion hearing, the prosecution supplemented the record from the preliminary hearing with testimony from additional witnesses. I gather that, for all intents and purposes, the State presented its entire case against McGill. After considering the evidence presented at both hearings, the district court denied the motion to dismiss. McGill was then convicted in a bench trial on stipulated facts.

McGill has not appealed the convictions, and the stipulated evidence submitted at trial is nowhere in the record. Rather, McGill has challenged the denial of his motion to dismiss. On appeal, the parties agree that the denial of the motion continues to present a justiciable controversy notwithstanding McGill's conviction at trial. I have no reason to go poking around behind that agreement. And, on appeal, McGill requests this court find that his motion to dismiss should have been granted.

With that unusual backdrop, just how the corpus delicti rule actually operates percolates close to the surface. Courts have split on whether the rule governs the admissibility of a confession or the sufficiency of the evidence to convict. Some courts hold that without corroboration, a confession cannot be admitted as evidence. See *State v. Fundalewicz*, 49 A.3d 1277, 1278-79 (Me. 2012); *People v. Konrad*, 449 Mich. 263, 269-70, 536 N.W.2d 517 (1995); *Sweat*, 366 N.C. at 88. Other courts apply the rule to say that an uncorroborated confession is legally insufficient to prove guilt. See *United States v. Stephens*, 482 F.3d 669, 673 (4th Cir. 2007); *Hodge v. State*, 823 So. 2d 1162, 1166 (Miss. 2002); *Bordman v. State*, 56 S.W.3d 63, 71 (Tex. App. 2001); *Allen*, 287 Va. at 75-78. In different cases, the Kansas Supreme Court has taken each of those approaches. See *State v. Tillery*, 227 Kan. 342, Syl. ¶ 2, 606 P.2d 1031 (1980) ("An uncorroborated extrajudicial confession is insufficient to sustain a conviction."); compare *State v. Pyle*, 216

Kan. 423, Syl. ¶ 2, 532 P.2d 1309 (1975) ("[A]s a basis for the introduction of the defendant's confession or admission, the prosecution is not required to establish corpus delicti by . . . clear and convincing [evidence] . . . ; a slight or prima facie showing is sufficient.").[5]

[5] In *State v. Grissom*, 251 Kan. 851, 884, 886, 840 P.2d 1142 (1992), the court acknowledged each application of the rule, citing respectively *Tillery* and *Pyle*, in addressing different issues on appeal.

In the run of cases, either application of the rule at trial theoretically ought to yield the same result when the confession lacks corroboration. Under the admissibility approach, the confession never gets before the jury; and without other evidence, the prosecution should founder either on a motion to acquit or in the jury room. Under the sufficiency approach, the district court ought to grant a motion to acquit at the close of the State's case or after both sides have rested. (If a district court improvidently submits the case to the jurors and they return a legally unsustainable guilty verdict, then the defendant should prevail on a renewed motion.)

But the approaches do have differing implications for how the issue should be joined in the district court and reviewed on appeal. If the rule is one of admissibility, it could be raised in a motion in limine, the purpose of which is to secure a ruling in advance of trial excluding particular evidence. See *State v. Shadden*, 290 Kan. 803, 816, 235 P.3d 436 (2010) (admission of evidence). Were the motion denied, the objection would have to be renewed at trial, and the failure to do so would likely bar appellate review. K.S.A. 60-404; *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 (2009). The district court also might have to confront dicey rulings on conditional admission of the confession at trial subject to corroboration and on how the parties ought to deal with the confession in front of the jurors before its admission. If the rule is one of sufficiency, a motion in limine would be inappropriate. And sufficiency of the evidence could be raised for the first time on appeal, so no objection or argument in the district court would be required—though trial counsel would be remiss for having failed to raise the point. *State v. Farmer*, 285 Kan. 541, Syl. ¶ 1, 175 P.3d 221 (2008). The

standard for appellate review of a district court's ruling on the admission of evidence is not the same as the one for the sufficiency of the evidence to sustain a conviction. See *State v. Raskie*, 293 Kan. 906, 919-20, 269 P.3d 1268 (2012) (sufficiency of evidence); *Shadden*, 290 Kan. 803, Syl. ¶ 4 (admission of evidence).

In the *Opper-Smith-Calderon* trilogy, the Court treats the modified corpus delicti rule as one addressing the sufficiency of the evidence to convict. *Calderon*, 348 U.S. at 161-62 (issue before the Court is sufficiency of evidence to convict, not admissibility of defendant's statements); *Smith*, 348 U.S. at 159 (government produced sufficient corroboration of defendant's admissions "to permit the case to go to the jury"); *Opper*, 348 U.S. at 93 (To satisfy the rule, "the essential facts admitted . . . plus the other evidence besides the admission must, of course, be sufficient to find guilt beyond a reasonable doubt."). The decisions tacitly hold the rule operates that way and premise their analysis of the law and the evidence on that determination. They do not discuss the rule in terms of admitting a defendant's statement as evidence—a striking omission if that were the proper application of the rule. For the most part, the Kansas appellate court decisions similarly recognize the rule as addressing the sufficiency of the evidence to convict. See *State v. Berberich*, 267 Kan. 215, 219-20, 978 P.2d 902 (1999); *State v. Waddell*, 255 Kan. 424, 431-34, 874 P.2d 651 (1994); *State v. Bradford*, 254 Kan. 133, 132-34, 864 P.2d 680 (1993); *Tillery*, 227 Kan. 342, Syl. ¶ 2; *State v. Orange*, No. 108,806, 2014 WL 37688, at *8 (Kan. App. 2014) (unpublished opinion), *petition for rev. filed* January 29, 2014; *State v. Dern*, No. 106,406, 2013 WL 2395253, at *11 (Kan. App. 2013) (unpublished opinion), *rev. granted* December 27, 2013; *State v. Harmon*, No. 105,010, 2012 WL 1970056, at *2 (Kan. App. 2012) (unpublished opinion), *rev. denied* 296 Kan. 1132 (2013). The *Pyle* decision, however, applies the rule as one of admissibility. 216 Kan. 423, Syl. ¶ 2.

Because the corpus delicti rule has been fashioned to prevent convictions based on confessions to crimes that cannot be independently established, the sufficiency of the evidence approach better adheres to that purpose. Applied that way, the rule directly addresses the factual support for the State's case. When that sup-

port fails as a matter of law, the rule should require a discharge at preliminary hearing and certainly would requires judgment of acquittal at trial. Treated as a rule of admissibility for an accused's statements, it furthers that purpose only indirectly.

Here, McGill asserted the corpus delicti rule through a pretrial motion to dismiss rather than at trial. A motion to dismiss may be used to challenge the sufficiency of the State's evidence produced at a preliminary hearing to bind a defendant over for trial. *State v. Washington*, 293 Kan. 732, 734, 268 P.3d 475 (2012). Based on the view that the modified corpus delicti rule goes to the sufficiency of the evidence, I presume McGill should have been discharged at the preliminary hearing, and, therefore, his motion to dismiss should have been granted.[6]

■ Given the purpose of a motion to dismiss in testing the State's evidence produced at preliminary hearing, the district court should have decided the challenge based only on that evidence. At the hearing on the motion to dismiss, the State could not have supplemented the preliminary hearing record with additional evidence. But given the confusion in the Kansas appellate authority and McGill's request for a motion in limine precluding admission of the confessions at trial, the district court would have had to receive the balance of the State's evidence to fairly consider that alternative relief.

A defendant ought to be bound over for trial at a preliminary hearing if the evidence establishes that the charged crime has been committed and there is probable cause to believe the defendant committed it. See K.S.A. 22-2902(3) (defendant should be bound over at preliminary hearing "[i]f from the evidence it appears that a felony has been committed and there is probable cause to believe that a felony has been committed by the defendant"); *Washington*, 293 Kan. at 733 (at preliminary hearing, court must determine "whether a crime has been committed" and "whether there is probable cause to believe that the accused committed the crime"). A defendant should be bound over even when the evidence is weak. 293 Kan. at 734. But an uncorroborated confession would be insufficient to establish the charged crime had been committed, even though it presumably would demonstrate probable cause to believe

the defendant committed that offense. The preliminary hearing standard suggests the State has an obligation to provide some extrinsic evidence of the crime at a preliminary hearing. Moreover, common logic dictates that if an uncorroborated confession is insufficient to sustain a conviction as a matter of law at trial, it also should be insufficient to hold a defendant for that trial. See *People v. Powers-Monachello*, 189 Cal. App. 4th 400, 408, 116 Cal. Rptr. 3d 899 (2010). Legally inadequate evidence—in contrast to factually disputable evidence—fails both at preliminary hearing and at trial.

But courts have split on whether the corpus delicti rule applies at preliminary hearings. *Rayyis v. Superior Court*, 133 Cal. App. 4th 138, 149, 35 Cal. Rptr. 3d 12 (2005) (noting and following "long and unbroken line of cases that have applied the [corpus delicti] rule to preliminary hearings); *Sheriff v. Middleton*, 112 Nev. 956, 961-62, 920 P.2d 282 (1996) (applying rule in preliminary hearing, thereby requiring prosecution to produce some independent evidence of corpus delicti); but see *State ex rel. Peterson v. Ward*, 707 P.2d 1217, 1219 (Okla. Crim. App. 1985) (corpus delicti rule inapplicable to sufficiency of evidence at preliminary hearing). Pragmatism favors applying the corpus delicti rule to preliminary hearings. That approach affords benefits to both the government and the defendant. A defendant may demand a preliminary hearing to test the government's evidence and, thus, may be discharged comparatively early in the process if the evidence is legally wanting. Were the rule inapplicable to a preliminary hearing, McGill could not have raised the issue on a motion to dismiss and would have had to appeal from the trial adjudication of guilt.

The State also has a right to a preliminary hearing. K.S.A. 22-2902(1) ("The state and every person charged with a felony shall have a right to a preliminary examination . . . ."). By invoking that right, the State may secure a judicial assessment of the adequacy of its evidence before trial. Where, as here, the legal sufficiency of the evidence might be fairly debated, that is a distinct benefit. Jeopardy does not attach when the State fails to bind a defendant over at a preliminary hearing or when the defendant prevails on a motion to dismiss. So the defendant may be charged again. See

*State v. Roberts,* 293 Kan. 29, 37, 259 P.3d 691 (2011) (jeopardy attaches at trial); *State v. Zimmerman & Schmidt,* 233 Kan. 151, 155, 660 P.2d 960 (1983) (If a defendant has been discharged at preliminary hearing based on insufficient evidence, the State may either appeal that ruling or refile the charges when additional evidence becomes available).

I suppose all of that would be true here. If we were disposed to reverse and, thus, to direct that the motion to dismiss be granted and the State were later to develop evidence genuinely corroborating the confessions, McGill could then be charged. Had McGill appealed from the convictions themselves, arguing the insufficiency of the trial evidence, a judgment of acquittal presumably would be the appropriate remedy. See *State v. Scott,* 285 Kan. 366, Syl. ¶ 2, 171 P.3d 639 (2007) (judgment of acquittal proper relief on appeal when trial evidence legally insufficient to convict); *State v. Herrman,* 33 Kan. App. 2d 46, 50, 99 P.3d 632 (2004) (reversing conviction on appeal when facts stipulated in bench trial insufficient to support charge); *State v. Plemons,* No. 100,287, 2009 WL 3082530, at *5 (Kan. App. 2009) (unpublished opinion) (same), *rev. denied* 290 Kan. 1101 (2010); *State v. Sanchez,* No. 91,464, 2004 WL 1878449, at *3 (Kan. App. 2004) (unpublished opinion) (same). That judgment would preclude any further prosecution of McGill on the charges.

All of those procedural ramifications aside, the State presented its best case against McGill in responding to the motion to dismiss, and his confessions remained uncorroborated. Accordingly, under the modified corpus delicti rule applicable in Kansas, the district court should have discharged him.