NOT DESIGNATED FOR PUBLICATION

No. 121,037

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOSEPH T. MCGILL,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Opinion filed August 14, 2020. Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., BRUNS and SCHROEDER, JJ.

PER CURIAM: Joseph T. McGill appeals from the district court's denial of his K.S.A. 60-1507 motion, which stemmed from a claim of trial error and multiple ineffective assistance claims. McGill now raises two of those ineffective assistance claims on appeal, specifically those related to his counsel's failure to: (1) engage in plea negotiations on his behalf; and (2) seek suppression of McGill's statements on a written polygraph questionnaire and to his therapist that he had sexually abused his infant daughters. After a thorough review of the motion, files, and records of the case, we find no error in the court's decision and affirm.

1

In 2012, the State charged McGill with two counts of aggravated indecent liberties with a child, alleging that McGill had engaged in lewd fondling or touching of his daughter in 2005 when she was three months old and his other daughter in 2011 when she was one year old. The charges stemmed from a series of three confessions made by McGill, first by disclosing the encounters on paperwork before a polygraph examination, then to his therapist during a court-ordered sex offender treatment session, and finally to his wife. McGill hired Mark T. Schoenhofer to represent him throughout the case.

Before trial, McGill moved to dismiss or, in the alternative, to exclude the evidence of his confessions through a motion in limine. McGill asked the district court to dismiss the charges pursuant to the common-law corpus delicti rule that prevented him from being convicted of the charges based solely on his uncorroborated confessions. In the alternative, the motion sought an order excluding the evidence of his confessions. The district court later denied McGill's motion after a pretrial motions hearing, stating:

> "I don't believe a court-ordered dismissal is an appropriate remedy for what the defendant is requesting in this case.
>
> "The question and issues raised by the defense I think essentially are a sufficiency of evidence issue. And I just don't think that a motion or an order dismissing the case is an appropriate remedy here.
>
> "As for the motion *in limine* in which the defendant asks for an order to suppress or to find inadmissible the defendant's three confessions, the defendant's motion is denied. The defendant's three confessions are admissible in evidence."

McGill later agreed to proceed to a bench trial on stipulated facts. The district court ultimately found him guilty of both charges and sentenced him to life in prison

without the possibility of parole for 25 years on one count and 122 months on the other. The terms were to be served concurrently.

McGill directly appealed his convictions, challenging only the district court's denial of his pretrial motion to dismiss based on the corpus delicti issue. *State v. McGill*, 50 Kan. App. 2d 208, 209-12, 328 P.3d 554 (2014). Schoenhofer continued representing McGill for the appeal. A divided panel affirmed his convictions in May 2014, determining that his wife's testimony at the preliminary hearing sufficiently corroborated the confessions. 50 Kan. App. 2d at 224. McGill petitioned for review of that decision, but the Kansas Supreme Court denied the petition in January 2016. This court issued a mandate the next month.

Just under a year later, McGill filed a K.S.A. 60-1507 motion, asserting both trial errors and accompanying claims of ineffective assistance of counsel. As for the ineffective assistance claims, McGill argued that Schoenhofer failed to provide effective assistance by mainly focusing on the corpus delicti issue and not trying to challenge the admission of the confessions based on the Fifth Amendment to the United States Constitution nor engaging in plea negotiations on McGill's behalf. In response, the State agreed that Schoenhofer's alleged failure to engage in plea negotiations warranted an evidentiary hearing, but the State argued McGill's remaining claims could be summarily denied based on the record.

The district court held a nonevidentiary hearing in August 2017, at which the parties discussed whether a full evidentiary hearing should be held on all of McGill's claims. The court concluded that only McGill's ineffective assistance claim related to plea negotiations warranted an evidentiary hearing. The court generally found McGill failed to show that any suppression motion would have been granted or that his statements were otherwise inadmissible, thus Schoenhofer did not provide ineffective assistance by failing to pursue those arguments.

3

The district court held an evidentiary hearing in July 2018, at which Schoenhofer, McGill, and McGill's father testified.

Schoenhofer testified he discussed McGill's options with him early in the case, including entering a plea, but advised that any initial offer would be to plead as charged to life in prison. Schoenhofer based his opinion on his own experience in defending Jessica's Law cases. Schoenhofer also testified he would have pursued a plea offer if McGill had directed him to, but that McGill never did so. Instead, Schoenhofer believed pursuing the corpus delicti issue would lead to dismissal of the charges.

After the district court denied the motion to dismiss, Schoenhofer testified he advised McGill of three options: a plea bargain, a bench trial on stipulated facts, or a jury trial. Schoenhofer advised a jury trial would be "a painful experience" because the jury would get to hear McGill's confessions and the facts were "devastating," so he preferred a bench trial on stipulated facts because that would preserve the corpus delicti issue for appeal. Schoenhofer again advised McGill "out of experience with the DA's office on Jessica's Law cases," that any plea offer would be for life in prison "unless it was a weak case." Schoenhofer denied telling McGill that he would refuse to bring any plea offers from the State, instead testifying that he may have advised McGill any potential plea offers early in the case would not have been favorable and reiterated his belief that the State would not offer anything less than life in prison. Schoenhofer ultimately asked McGill "not to make a hasty choice" and talk it over with his parents.

McGill and his father both testified that Schoenhofer strongly believed in the chances of winning the corpus delicti motion, but that Schoenhofer did not promise or guarantee he would win the case. Unlike Schoenhofer's testimony, McGill stated he asked Schoenhofer to seek a plea agreement "early on in one of our conversations prior to many of the motions," but that Schoenhofer "didn't believe that a plea bargain would be necessary [because] we would win through corpus delicti." McGill and his father both

4

recalled conversations during which Schoenhofer said he would not bring a plea offer from the State to McGill.

McGill said he agreed that Schoenhofer advised him of three options after the district court denied the motion to dismiss, adding that Schoenhofer told him he believed they had a better chance of winning on the corpus delicti issue on appeal. So "a stipulated fact trial would be the quickest way for [McGill's case] to get started in the appellate process." McGill was open to negotiations up until the point the district court denied the motion to dismiss. McGill acknowledged that he never asked Schoenhofer to seek a plea bargain after the initial request "because [he knew] that [Schoenhofer] didn't like repeating himself." McGill discussed his decision to proceed to a bench trial with his family, noting financial concerns pushed him toward that decision. He also "didn't think there would be any real chance of getting a plea bargain" because his confessions would be admitted into evidence.

Ultimately, the district court issued a memorandum order denying McGill's K.S.A. 60-1507 motion. The court made the following factual findings based on the testimony elicited at the hearing:

"11.    Mr. Schoenhofer has been a practicing attorney for the last 25 years, and is experienced in the areas of civil, criminal and appellate law.

"12.    Mr. Schoenhofer's general practice ('habit') is that with plea negotiations, it begins with the client and the client's desire and interest in pursuing a resolution through plea negotiations. Mr. Schoenhofer addresses it at the beginning of his involvement in a case. In general, if a client desires a plea deal, Mr. Schoenhofer contacts the district attorney's office and pursues negotiations. In the present case, Christopher McGill confirmed everyone discussed the option of pleading or plea negotiation. Mr. McGill also confirmed discussing the options, including a plea agreement. Based upon Mr. Schoenhofer's experience, any plea offer at the outset of Mr. McGill's case would be a plea as charged for life in prison.

5

"13.	The initial focus and direction of Mr. McGill's case (even before Mr. Schoenhofer got involved) was pursuing the issue of the confession and corpus delicti. Mr. McGill confirmed he was previously aware of the concept as a former police officer.

"14.	Mr. Schoenhofer recalls Mr. McGill did not want a plea deal. If he had requested a plea offer, Mr. Schoenhofer would have gotten an offer from the State. Mr. McGill did not tell Mr. Schoenhofer he wanted a plea offer and did not direct him to obtain one. Conversely, Mr. McGill states he asked Mr. Schoenhofer to seek a plea offer and was always open to negotiations. Mr. Schoenhofer has never disregarded a client's request for a plea offer nor has he ever received a plea offer and failed to transmit it to a client. Mr. Schoenhofer did not withhold a plea offer made by the State. Mr. Schoenhofer never told Mr. McGill that even if he had received a plea offer from the State, he would not have informed him. Mr. Schoenhofer does not act without talking to his client first, including approaching the State to seek a plea offer.

"15.	This initial position did not change during the pendency of the motion to dismiss.

"16.	Mr. Schoenhofer recalls ADA Mandee Schauf feeling as strong about her case as Mr. Schoenhofer felt about his, and that the case would have to be decided by motion. There was no indication the State would take anything less than a plea as charged.

"17.	While Mr. Schoenhofer felt strongly about the corpus delicti defense, he never promised or guaranteed a win.

"18.	After the Court denied Mr. Schoenhofer's motion to dismiss regarding corpus delicti, he consulted with Mr. McGill about the three available options:  First, enter a plea bargain and plea pursuant to that agreement. Second, proceed to a bench trial on stipulated facts. Third, have a jury trial. Mr. Schoenhofer discussed with Mr. McGill the option of negotiating a plea. Mr. Schoenhofer told Mr. McGill that if he desired a plea deal, he would approach the State, but he suggested they proceed on a stipulated facts trial and appeal. Mr. Schoenhofer

6

asked Mr. McGill to think it over, get counsel from his parents, and not make a hasty decision. Mr. McGill decided to proceed with a stipulated facts bench trial and appeal. Mr. McGill did so without instructing Mr. Schoenhofer to engage in plea negotiations.

"19.    Mr. Schoenhofer did not state that he would handle the direct appeal for free. Since Mr. McGill decided to forgo a jury trial and instead try the case to the Court on stipulated facts, Mr. Schoenhofer would handle the appeal for no additional cost, in that the $20,000.00 retainer covered the cost of the appeal. An additional $5,000.00 was paid to Mr. Schoenhofer to pursue a petition for review in front of the Supreme Court."

Based on these facts, the district court denied the petition. The court found "there is an insufficient basis to establish the [deficient performance] prong of the test for ineffective assistance of counsel" because even though the evidence showed some discussion of McGill's options, "the clear direction of the case from the very beginning was to fully pursue a motion to dismiss based upon corpus delicti [and] [t]here was no directive [by McGill] for Mr. Schoenhofer to pursue a plea offer." Similarly, the court found "there is an insufficient basis to establish the second prong [because] there is no evidence of prejudice to Mr. McGill. [*Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. Mr. McGill fails under either the *Strickland* or *Cronic* standard."

McGill timely appealed.

7

*The district court did not err in denying McGill's ineffective assistance of counsel claim based on failure to engage in plea negotiations.*

McGill argues first that the district court erred in denying his claim that his counsel was ineffective for failing to engage in plea negotiations on his behalf. McGill contends the court erroneously concluded he had failed to meet the burden to establish ineffective assistance under the first prong of the *Strickland* standard. McGill also asserts that if the panel agrees with his analysis, the court's failure to address the prejudice prong of *Strickland* in its ruling requires a remand to address that issue.

In response, the State contends the district court's conclusions about McGill's counsel's effectiveness are supported by substantial competent evidence. The State asserts the testimony elicited at the hearing established that McGill and his counsel made a joint decision about how to proceed based on the apparent lack of physical evidence to corroborate McGill's confessions, even agreeing to proceed with a bench trial on stipulated facts to preserve the corpus delicti issue for appeal. Likewise, the State asserts the testimony showed McGill never conveyed an express desire to enter plea negotiations because he supported and believed his counsel's strategy would succeed.

When presented with a K.S.A. 60-1507 motion, a district court has three options:

"'(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented

8

requiring a full hearing.' [Citations omitted.]" *White v. State*, 308 Kan. 491, 504, 421 P.3d 718 (2018).

When a district court denies a K.S.A. 60-1507 claim after holding an evidentiary hearing—as the court did here on McGill's ineffective assistance claim based on the lack of plea negotiations—the court must issue findings of fact and conclusions of law on all issues presented at the evidentiary hearing. K.S.A. 2019 Supp. 60-1507(b); Supreme Court Rule 183(f) and (j) (2020 Kan. S. Ct. R. 223).

This court reviews the district court's findings of fact to determine whether they are supported by substantial competent evidence and are sufficient to support the court's conclusions of law. *Fuller v. State*, 303 Kan. 478, 485, 363 P.3d 373 (2015). Substantial evidence is legal and relevant evidence that a reasonable person could accept as adequate to support a conclusion. *State v. Doelz*, 309 Kan. 133, 138, 432 P.3d 669 (2019). This court does not reweigh the evidence or reassess the credibility of witnesses. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018). This court accepts as true the inferences supporting the district court's findings. *State v. Morton*, 286 Kan. 632, 641, 186 P.3d 785 (2008). This court, however, exercises unlimited review over the district court's conclusions of law and its decision to grant or deny the K.S.A. 60-1507 motion. *White*, 308 Kan. at 504.

As McGill notes, Kansas courts ordinarily consider ineffective assistance claims under the two-prong analysis established in *Strickland*, 466 U.S. at 687. So to prevail on this claim, McGill needed to show "(1) that the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, i.e., that there is a reasonable probability the jury would have reached a different result absent the deficient performance." *State v. Salary*, 309 Kan. 479, 483, 437 P.3d 953 (2019).

On this point, McGill also references *State v. Davis*, 277 Kan. 309, 314, 85 P.3d 1164 (2004), asserting that "[t]o prove deficiency of counsel, the movant must show that trial counsel made errors so serious that counsel's performance deprived the movant of a fair trial guaranteed by the Sixth Amendment to the U.S. Constitution." We find that McGill has not established ineffective assistance of trial counsel under either prong of the *Strickland* analysis.

*McGill fails to show Schoenhofer rendered deficient performance.*

McGill asserts the district court erroneously concluded that he did not meet the deficient performance prong from *Strickland* because there is not substantial competent evidence to support the court's factual findings and the resulting conclusion that he failed to sustain his burden as the movant. The State responds that the evidence adduced at the hearing showed that McGill agreed to the direction taken by Schoenhofer—which was to pursue the corpus delicti issue at the center of his direct appeal—and that McGill never directed Schoenhofer to pursue a plea agreement.

As explained, a defendant must establish deficient performance by showing that counsel's performance was objectively unreasonable under the totality of the circumstances, but there is a "strong presumption" that counsel provided "'adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014) (quoting *Chamberlain v. State*, 236 Kan. 650, 655, 694 P.2d 468 [1985]). A defendant must identify specific acts or omissions by counsel that they allege did not result from exercising reasonably professional judgment, and then the reviewing court must then determine whether those acts or omissions fell outside the scope of professionally competent assistance. *Strickland*, 466 U.S. at 690.

10

A defendant's Sixth Amendment right to counsel extends to the plea bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012). During plea negotiations, a defendant is entitled to the effective assistance of competent counsel. 566 U.S. at 162. A criminal defendant has the sole authority to determine what plea to enter as a right specifically exempted from attorney strategy decisions. *Flynn v. State*, 281 Kan. 1154, 1163, 136 P.3d 909 (2006).

The specific acts or omissions here were Schoenhofer's alleged failure to engage in plea negotiations early in the case at McGill's request, and purportedly his failure to do the same after the court denied the motion to dismiss. McGill's argument essentially comes down to his assertion that "any reasonable analysis of the testimony" must conclude that Schoenhofer was "absolutely convinced that he would win [McGill's] case based solely on the corpus delicti issue," and ultimately that his singular focus on this issue "was a clear and undeniable ineffective performance." Adopting this position would require reweighing the evidence, which this court will not do. *Chandler*, 307 Kan. at 668.

McGill's emphasis on the testimony about the lack of any plea offers in the record or that Schoenhofer's case file contained nothing saying McGill did not want a plea bargain is a misapplication of this court's standard of review. We must review the district court's factual findings for substantial competent evidence, so pointing out some contrary evidence in the record does not preclude the possibility that other evidence supports the court's ultimate legal conclusion that his counsel rendered adequate performance.

In addition, McGill's assertions ignore Schoenhofer's testimony that his confidence in the success of the corpus delicti motion reflected the Kansas caselaw on the issue *at the time*. But while McGill's petition for review was pending, the Kansas Supreme Court issued *State v. Dern*, 303 Kan. 384, 411-12, 362 P.3d 566 (2015), which changed the analysis of corpus delecti in Kansas to an inquiry regarding the trustworthiness of the confession—an approach that substantially weakened McGill's argument. Pursuing that

legal strategy so strongly did not lead to the outcome he expected, but that pursuit does not constitute deficient performance just because the appeal did not succeed and the law changed midstream. Here, the key fact comes down to whether McGill ever *directed* Schoenhofer to pursue a plea bargain, and similarly, whether Schoenhofer unreasonably ignored any such request. More specifically, the question is whether McGill has shown the district court's factual findings on this point are supported by substantial competent evidence. Based on a review of the testimony at the hearing, there is substantial evidence to support the court's decision.

McGill and Schoenhofer both testified they discussed the possibility of a plea early in the case, but they disagreed about whether McGill specifically told Schoenhofer to obtain a plea offer from the State. Based on his experience, Schoenhofer believed any plea offer extended by the State early in the case would be to plead as charged, meaning Schoenhofer would be subject to the same life sentence as he ultimately received. Likewise, both of their testimonies established that McGill believed in and agreed to Schoenhofer's strategy to fully litigate the corpus delicti motion, even after the court denied relief on that issue. McGill also noted that after they lost the corpus delecti argument before the district court he realized that the chances of a plea bargain were gone. Simply put, McGill fails to show that the evidence available in the record cannot support the court's factual findings.

Moving on to the district court's ultimate legal conclusion that McGill failed to show deficient performance, his arguments are similarly unpersuasive. McGill's brief goes to great lengths to evaluate the evidence that discredits the court's factual findings but falls short when discussing the legal conclusions. A point raised incidentally in a brief and not argued in it is deemed abandoned. *State v. Lowery*, 308 Kan. 1183, 1231, 427 P.3d 865 (2018). More importantly, McGill fails to overcome the "strong presumption" courts exercise when evaluating trial counsel's strategic decisions. See *Kelly*, 298 Kan. at 970.

12

The closest McGill comes to establishing deficient performance is an assertion that "[n]o experienced lawyer believes that an appellate court won't change its mind, and overturn precedent," accompanied by a reference to a Kansas Supreme Court case from 2015 about evaluating criminal history at sentencing which overturned a decision from the year before. Not only are those cases irrelevant to this issue, as the State succinctly explains, McGill "essentially faults [Schoenhofer] for failing to read the tea leaves and divine that his chosen strategy would ultimately prove unsuccessful." In short, the district court correctly concluded based on the evidence that Schoenhofer's performance was not deficient.

*Even assuming Schoenhofer rendered deficient performance, McGill nonetheless fails to show prejudice.*

McGill also contends the district court failed to address the prejudice prong, asserting that a remand is necessary if this court determines Schoenhofer rendered deficient performance. He asserts that he established prejudice, because "but for [Schoenhofer's] ineffectiveness the outcome would have been different, i.e., that [Schoenhofer's] ineffectiveness leads to a lack of confidence in the result of Mr. McGill's trial. *Bledsoe v. State*, 283 Kan. 81, 150 P.3d 868 (2007)." His argument is not persuasive.

To start, contrary to McGill's assertion, the district court's order denying the K.S.A. 60-1507 motion does address the prejudice prong. The court made factual findings that:

- McGill and Schoenhofer discussed plea negotiations at the start of the case.
- Schoenhofer believed and continually advised McGill that any plea offer would be a plea as charged for life in prison. Schoenhofer recalled the State

13

feeling strongly about the case and there was no indication the State would accept anything less than a plea as charged.

- Schoenhofer did not recall McGill directing him to seek a plea offer and would have done so if requested. Nor did Schoenhofer withhold any plea offers from the State and he denied telling McGill that he would not have informed him of any plea offers.

- McGill stated he asked Schoenhofer to seek a plea offer and was always open to negotiations up until the court denied the motion to dismiss.

- After the court denied the motion to dismiss, Schoenhofer discussed three options with McGill, including plea negotiations, but advised they should proceed with a stipulated facts trial and appeal on the corpus delicti issue. McGill agreed to this approach without asking Schoenhofer to engage in plea negotiations.

Based on these facts, the district court concluded "there is an insufficient basis to establish the second prong—there is no evidence of prejudice to Mr. McGill." Admittedly, the court's conclusions of law focus more on explaining that McGill failed to show deficient performance, but the court specifically concluded the evidence failed to establish prejudice under *Strickland* as well. For these reasons, this court is not required to remand for more consideration of the prejudice prong as McGill requests because the district court's factual findings and conclusions of law are sufficient for appellate review. See *Robertson v. State*, 288 Kan. 217, 232, 201 P.3d 691 (2009); Supreme Court Rule 183(j).

As McGill notes, to meet the prejudice prong a K.S.A. 60-1507 movant must show a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. A reasonable probability means "'a probability sufficient to undermine confidence in the outcome.'" *Kelly*, 298 Kan. at 970. So in other words, McGill needed to show that engaging in plea negotiations would have led to a

14

different outcome than the conviction and controlling sentence he received of a life sentence without the possibility of parole for 25 years. Simply put, McGill has not shown he is entitled to relief on this point.

First, McGill's brief minimally addresses the prejudice prong, seemingly because he believed the district court had failed to address prejudice in its ruling on this claim. His entire argument consists of two references to *Bledsoe*, 283 Kan. 81, both without a meaningful application to the facts of his case. As a result, we deem this claim abandoned for inadequate briefing. See *Salary*, 309 Kan. at 481 (issues not adequately briefed deemed waived or abandoned); *Lowery*, 308 Kan. at 1231 (points raised incidentally and not argued in a brief are also deemed abandoned).

Second, based on the testimony elicited at the hearing, there was no reasonable probability that merely entering plea negotiations would have led to a lesser sentence. Schoenhofer repeatedly testified that he believed the State would not offer anything less than for McGill to plead as charged to life in prison. As the United States Supreme Court has recognized, "[p]lea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks." *Premo v. Moore*, 562 U.S. 115, 124, 131 S. Ct. 733, 178 L. Ed. 2d 649 (2011).

The facts in *Premo* are not directly analogous to the facts here because the defendant in that case argued his counsel was ineffective for advising him to enter a guilty plea rather than pursue a motion to suppress. Still, the Court's analysis provides helpful guidance when considering potential prejudice from a trial counsel's strategic decision about plea negotiations rather than another strategy. As the Court explained,

> "The stakes for defendants are high, and many elect to limit risk by forgoing the right to assert their innocence. A defendant who accepts a plea bargain on counsel's advice does

15

not necessarily suffer prejudice when his counsel fails to seek suppression of evidence, even if it would be reversible error for the court to admit that evidence." 562 U.S. at 129.

Surely the same would be true for a defendant who agrees not to entertain plea negotiations on his counsel's advice. In short, McGill's willingness in hindsight to accept a lower sentence has little bearing on whether he was prejudiced by his counsel's actions for this claim.

Third, and alternatively, the United States Supreme Court has also recognized an exception when an ineffective assistance of counsel claim turns on a complete denial of assistance at a critical stage of a criminal proceeding. See *United States v. Cronic*, 466 U.S. 648, 658-59, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). Plea negotiations constitute a critical stage of a defendant's criminal proceedings. See *Lafler*, 566 U.S. at 162 ("Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process."). Under the so-called *Cronic* exception, a court presumes prejudice and a movant "is 'spared . . . the need of showing probable effect upon the outcome.'" *Fuller*, 303 Kan. at 487. This makes sense, given the uncertainty discussed surrounding plea negotiations discussed in *Premo*.

But even under the *Cronic* exception, McGill must show that his counsel rendered deficient performance. Because substantial competent evidence supports the district court's findings on the first prong of *Strickland* and McGill has not proved otherwise, a presumption of prejudice does not entitle him to relief on this claim.

For these reasons, we affirm the district court's decision concluding Schoenhofer did not render ineffective assistance for failing to engage in plea negotiations on McGill's behalf.

*The district court did not err in summarily denying McGill's ineffective assistance of counsel claim based on counsel's failure to pursue suppression of his confessions.*

McGill also argues the district court erred by summarily denying his ineffective assistance claim that stemmed from his counsel's alleged failure to seek suppression of his confessions. He asserts that Schoenhofer deliberately chose not to seek suppression, despite a purportedly viable argument based on McGill's Fifth Amendment rights.

In response, the State argues the district court correctly determined McGill had failed to establish ineffective assistance of counsel. The State asserts that McGill never affirmatively invoked his Fifth Amendment rights against self-incrimination, nor did he show any relevant exceptions applied. Thus, as the court ultimately concluded, any suppression motion would have likely failed, so Schoenhofer did not provide ineffective assistance by not filing a suppression motion.

To start, some clarification of McGill's claim is helpful. McGill argued in his K.S.A. 60-1507 motion that Schoenhofer provided ineffective assistance by failing to challenge the admission of each of his three confessions as violations of (1) his Fifth Amendment right against self-incrimination; and (2) the Kansas statutory codification of the right against self-incrimination, as in K.S.A. 2019 Supp. 60-460(f). Yet McGill only carries forward some of these arguments on appeal, specifically that his statements on the polygraph questionnaire and to his therapist violated his Fifth Amendment rights. As a result, McGill has waived or abandoned the issues not raised in his brief. *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018) (issues not briefed are deemed waived/abandoned). In other words, we need not consider McGill's claim to the extent that it depends on K.S.A. 2019 Supp. 60-460(f) or on suppression of his confession to his wife.

17

When a district court summarily denies a K.S.A. 60-1507 motion based only on the motions, files, and records after a preliminary hearing, the appellate court is in just as good a position as the district court to consider the merits de novo. *Grossman v. State*, 300 Kan. 1058, 1061, 337 P.3d 687 (2014). While McGill acknowledges that the district court summarily denied this ineffective assistance claim without holding an evidentiary hearing, his brief does not address whether he was *entitled to* an evidentiary hearing, i.e., whether more evidence is needed to establish his claim. Similarly, McGill apparently concedes that the district court's factual findings are accurate. According to McGill, the only inquiry for this court is to determine whether he has shown ineffective assistance in his trial counsel's decision to not seek suppression of the statements made on the polygraph questionnaire and to his sex offender treatment counselor.

To prevail on a claim of ineffective assistance, McGill must show that (1) his counsel rendered deficient performance under the totality of the circumstances; and (2) the outcome would have been different but for the deficient performance. See *Salary*, 309 Kan. at 483. Under the deficient performance prong, courts generally will defer to counsel's strategic decisions made in the exercise of reasonable professional judgment. See *Kelly*, 298 Kan. at 970. To overcome this strong presumption, a K.S.A. 60-1507 movant like McGill must identify and allege specific acts or omissions by counsel that fall outside the scope of professionally competent assistance. *Strickland*, 466 U.S. at 690.

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This privilege against self-incrimination applies to permit a defendant to refuse to testify against himself at a criminal trial and also when called on to "'answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.'" *Minnesota v. Murphy*, 465 U.S. 420, 426, 104 S. Ct. 1136, 79 L. Ed. 2d 409 (1984) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S. Ct. 316, 38 L. Ed. 2d 274 [1973]). "To qualify for the Fifth Amendment

18

privilege, a communication must be testimonial, incriminating, and compelled." *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt* County, 542 U.S. 177, 189, 124 S. Ct. 2451, 159 L. Ed. 2d 292 (2004) (citing *United States v. Hubbell*, 530 U.S. 27, 34-38, 120 S. Ct. 2037, 147 L. Ed. 2d 24 [2000]).

Generally, an individual must affirmatively assert his Fifth Amendment right rather than answer to avoid making the incriminating statement. See *Murphy*, 465 U.S. at 429. But the United States Supreme Court has recognized some self-executing exceptions in which "some identifiable factor 'was held to deny the individual a "free choice to admit, to deny, or to refuse to answer."'" 465 U.S. at 429.

Here, the relevant exception invoked by McGill is the so-called "penalty" exception, where an individual's assertion "is penalized so as to 'foreclos[e] a free choice to remain silent, and . . . compe[l] . . . incriminating testimony.'" 465 U.S. at 434 (quoting *Garner v. United States*, 424 U.S. 648, 661, 96 S. Ct. 1178, 47 L. Ed. 2d. 370 [1976]). In *Murphy* the Court held that where the State "either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation," that assertion would lead to the "classic penalty situation [in which] the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution." 465 U.S. at 435. But because Murphy's probation officer never threatened that *refusal* would lead to a probation revocation, the Court ultimately concluded Murphy's incriminating statements were voluntary. 465 U.S. at 437-39.

In contrast, McGill asserts the Tenth Circuit Court of Appeals decision in *Von Behren* is analogous to the facts here. In that case, the court applied *Murphy* in the context of a defendant required to answer potentially incriminating questions about his sexual history on a polygraph questionnaire. *United States v. Von Behren*, 822 F.3d 1139, 1148 (10th Cir. 2016). Unlike *Murphy*, the Tenth Circuit held that Von Behren's

statements were compelled because the government had expressly asserted it would seek his remand to prison if he refused to answer the incriminating questions. Thus, this "threat constituted unconstitutional compulsion within the meaning of the Fifth Amendment." 822 F.3d at 1150. More recently, in *United States v. Richards*, 958 F.3d 961, 967-68 (10th Cir. 2020), the Tenth Circuit reiterated both the *Murphy* and *Von Behren* holdings. The court concluded that merely requiring a defendant to submit to periodic polygraph testing did not violate his Fifth Amendment rights because no government actor had threatened to revoke Richards' supervised release for refusing to answer a question. 958 F.3d at 967-68.

Here, McGill concedes he never directly invoked his Fifth Amendment rights, but asserts his rights were self-executing under *Von Behren* because of an "implied threat" that the State would revoke his probation and send him to prison if he failed to answer questions truthfully. McGill asserts the State impermissibly coerced his alleged confessions, thus violating his Fifth Amendment rights against self-incrimination. In reaching that conclusion, McGill argues the district court erroneously relied on *Murphy*, 465 U.S. at 426, instead of *Von Behren*, 822 F.3d at 1147, to conclude a hypothetical suppression motion would have been successful.

In response, the State argues the district court correctly relied on *Murphy* because McGill never invoked his Fifth Amendment rights when making the statements, nor did the State directly threaten him in such a way to render his Fifth Amendment rights self-executing. For that reason, the State asserts McGill failed to show how the facts here are not analogous to *Murphy* so that the suppression motion would have succeeded, thus the court correctly denied his ineffective assistance claim. We agree with the State.

Unlike *Von Behren*, McGill was not compelled to answer the questions after first refusing. He self-reported the sexual encounters on a prepolygraph questionnaire and later refused to take the actual polygraph examination. Then he disclosed the same

20

information to his sex offender treatment counselor at a scheduled session, after appearing nervous and being told by the therapist that he would receive of copy of McGill's polygraph results. McGill fails to show how his situation differs from the defendant's in *Murphy*, in that there was no evidence of a direct or implied threat premised on invoking his Fifth Amendment rights before he provided the incriminating statements.

Alternatively, the State points out that a suppression motion based only McGill's Fifth Amendment rights related to two of his confessions would not automatically lead to suppression of the third confession to his wife. Recall that on direct appeal, this court affirmed the district court's decision to deny the motion to dismiss and, in doing so, concluded that his wife's testimony corroborated the details of his confessions to make them admissible as corpus delicti of the charged offenses. *McGill*, 50 Kan. App. 2d at 224-25. The panel addressed several aspects of her testimony lending credibility to all three confessions, including: (1) his daughter's ages matched the ages he described in each confession; (2) his daughter's middle names matched the victims' names as described on the polygraph questionnaire; (3) he was alone with his daughters at the relevant times; (4) he sometimes showered with one of his daughters, which the panel saw as a "significant unique fact contained in McGill's confessions"; (5) the confessions were three separate statements made to non-law enforcement persons before an investigation formally began; and (6) his demeanor and behavior before each confession. 50 Kan. App. 2d at 222-24.

Since McGill is now only arguing that his counsel should have moved to suppress the statements on the written polygraph questionnaire and made to his therapist, the confession to his wife would still be admissible. In other words, even if this court accepts McGill's argument that his counsel's failure to file a suppression motion amounted to deficient performance, he cannot demonstrate prejudice because the last confession to his

wife coupled with her corroborating testimony would still be enough to lead to a conviction.

Simply put, McGill fails to demonstrate an express threat akin to the assertions made by the government in *Von Behren*. As a result, the district court correctly concluded that a suppression motion was unlikely to have succeeded, and therefore, his counsel was not ineffective for failing to file the motion.

Affirmed.